# WHEELING.

## SHIELDS AND PRESTON *v.* BENNETT, AUDITOR.

### July 20, 1874.

1874.
June Term.

1. The provision in the Constitution of this State, (Art. 6, sec., 30) that no law shall embrace more than one object, as qualified by the provision in the same section, that if any object shall be embraced in an act which is not expressed in the title, the act shall be void only as to so much thereof as shall not be so expressed, does not invalidate an act containing more than one object, when the objects are expressed in the title.

2. The provision in the same section, that the object of an act shall be embraced in the title, with the explanatory provision just stated, that an act shall be void only as to so much as shall not be so expressed, unequivocally, invalidates an act as to any object not expressed in the title.

3. The question, whether the object of an act is expressed in the title, is determined by comparison of the act and the title, and is not influenced by any former law which the latter act, if valid, expressly or by implication, repeals.

4. The most liberal construction, favorable to the validity of legislation, which the language of these provisions admits, should be adopted.

5. When the principal object of an act is expressed in the title, and the act embraces, with such principal object, other auxiliary objects, the act, if not otherwise objectionable, is valid, not only as to the principal, but likewise as to the auxiliary objects.

6. Generally, the language of a title should be construed in its most comprehensive sense.

7. When, in the title of an act, an appropriation is mentioned as its object, this is sufficient to sustain the validity of a provision indicating an officer on whose requisition the appropriation shall be paid.

8. The provision of the Constitution, in the section referred to, that no law shall be revived or amended by its title, but the law revived or the section amended shall be inserted at large in the new law, does not relate to the repeal of a law either by express words, or by the enactment of a subsequent law with which the former is inconsistent—by which it is necessarily displaced.

9. This provision does not require, that, when a section is amended, the act amending it, shall recite or show on its face that it does so, or that it shall in any manner indicate that such section previously existed.

10. The purpose of the provision is to inhibit the revival or amendment of a law by mere reference to its title, and to require that an act of the Legislature shall state on its face the law that it constitutes.

11. As the Legislature, when it thinks proper, may change the existing laws, or make new ones; and two inconsistent laws cannot at the same time regulate the same subject, the former necessarily ceases to be the law while the latter prevails.

12. The provision of the Constitution, (Art. 7, sec. 5,) that the Governor shall take care that the laws be faithfully executed, grants no power other than what is implied in the imposition of the duty.

13. This provision does not generally, if ever, make it the duty of the Governor, himself, to execute the laws. But, as the language implies, it makes it his duty carefully to observe the manner in which the different officers of the government exercise their proper functions and execute the laws committed to their charge, or their failure to perform such duties, and when they fail, if he has the power to remove them from office, in a proper case to remove them; or to bring the subject to the cognizance of that department of the government which has the power to remove or punish the delinquents.

14. If, in any case, the Legislature may properly provide that a public act shall be done, and leave it to the Governor, under this provision of the Constitution, to do the act, yet it will not be presumed in the construction of a doubtful statute, that the Legislature intended the Governor himself to do the act, and therefore did not intend to indicate another officer to do it. On the contrary, whenever the language of legislation can be understood to indicate such an officer, it will be construed to have such effect.

15. When the Legislature requires an officer, other than the Governor, to perform a public act, the constitutional provision in question, does not authorize the Governor to perform the act.

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

16. Under the act of the Legislature relative to the appointment and duties of the Janitor, passed in February, 1872, and the act making appropriations of public money, passed in February, 1873, the charges pertaining to the capitol building, mentioned in sections 31, 32 and 33, of the latter act, including the charge for insuring the capitol building, are not payable on the order of the Governor, but only on that of the Janitor.

17. The Governor's order does not bind or authorize the Auditor to issue his warrant for the payment of these charges; and this Court upon such order, will not by *mandamus* compel the Auditor to do so.

This was an original application to this Court, by the petitioners Joseph Shields and A. A. Preston, to award to them a peremptory *mandamus* against Edward A. Bennett, then Auditor of State, to compel him to issue his warrant on the Treasurer of State, in favor of the petitioners, for the sum of $229.50, the amounts of premiums on several policies of insurance that had been theretofore effected by the Secretary of the " State House Company," on the building then occupied by the several officers of State, required, by law, to keep their offices at the Seat of Government, and the two houses of the Legislature &c., as a capitol.

The material facts, together with the constitutional provisions and the several statutory enactments that were the subject of consideration and construction in this Court, appear in the opinion of the Court.

*Thomas B. Swann* and *Nicholas Fitzhugh* for the petitioners.

*Attorney General Mathews* for Edward A. Bennett, Auditor of State.

HOFFMAN, JUDGE, delivering the opinion of the Court:

On the 20th day of January, 1874, Shields and Preston filed their petition in this Court, in which they represent :

That, by an act passed by the Legislature on the 7th day of April, 1873, an appropriation of $10,000 was

made for the civil contingent fund for the fiscal year ending on the 30th day of September 1874; and an appropriation of $600 was made to insure the capitol building and State library, to be paid out of the civil contingent fund : That on the 15th day of November, 1873, the appropriation for insurance had not been exhausted : That the capitol building is owned by a body corporate, known as the State House Company, and occupied by the State, under a license by the Company : That ever since the building has been so occupied, the legislature has made provision for its insurance : That in November, 1873, Laidley, the secretary of the State House Company, made application to the petitioners, on behalf of the Company, to obtain policies of insurance on the capitol building, in the insurance companies represented by the petitioners—in the Fire and Marine Insurance Company of Wheeling, $5,000 ; in the Underwriters' Company of New York, $12,500; and in the Franklin Insurance Company, $12,500: That, in consequence of this application, the petitioners procured policies of insurance to be issued by the several insurance companies mentioned, for the respective amounts stated, on the capitol building, and delivered them to the Governor, who accepted and approved them, and, therefore, on the 15th day of November, 1873, made an order on the Auditor to pay out of the contingent fund, to the petioners, as agents of the companies mentioned, the sum of $229.50, the amount of premiums and costs due on the policies : That on the same day, the petitioners presented the order to the Auditor and applied to him for his warrant on the Treasurer for the sum last mentioned but he refused to issue his warrant, and endorsed on the order that it was presented for payment, and he declined to issue his warrant for the amount, because by law, the Janitor was charged with the proper care , and preservation of the capitol building, and bills for its insurance are required to be paid out of the civil contingent fund upon the requisition of the officers having those matters

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

in charge; and that, consequently, payment on this account should be made only upon the order of the Janitor: That the policies of insurance still remain with the Governor, and the petitioners have, out of their own moneys, paid to the insurance companies the sums due them respectively on the policies; and these sums are now their property, and the several insurance companies are not interested in the money. The petitioners, therefore, pray that a writ of *mandamus* be awarded, directed to the Auditor, commanding him to issue his warrant for $229.50 upon the Treasurer, payable to the order of the petitioner's agents, out of the appropriation for the civil contingent fund, on account of the policies.

It was ordered that a *mandamus nisi* issue to the Auditor, returnable on the 26th day of January, 1874.

The Auditor made return in which he states:

That the petitioners contracted for the insurance of the capitol buildings, with the State House Company, which was not the agent of the State, and had no authority to act in behalf of the State, and that the petitioners have no demand against the State:

That if the contract for the insurance of the capitol building, made between the petitioners and the State House Company, was approved by the Governor, he had no authority to approve and ratify it in behalf of the State, and the Auditor had no authority to issue his warrant on the Treasurer, upon the requisition presented by the petitioners:

That the Janitor is the only officer authorized by law to contract for the insurance of the capitol building:

That on the 17th day of November, 1873, the Janitor procured from Moore, (from whom policies of insurance on the building for the year ending on the 21st day of November, 1873, had theretofore been obtained, that had not then expired), policies of insurance for the year ending on the 21st of November, 1874, as follows: In the Union company of Baltimore, $5.000; the Peabody, in Wheeling, $5,-

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

000; Continental, New York, 10,000; Franklin, Wheeling, $10,000 ; America Central, New York, $5,000 ; Home, New York, $10,000 ; North British and Mercantile, $5,000 ; Nail City, Wheeling, $5,000 : That on the 17th of November, 1873, he made a requisition on the Auditor, in favor of Moore for $387, the amount of the premiums due for these policies, for which sum the Auditor issued his warrant on the Treasurer, payable out of the appropriation, for the civil contingent fund for the year 1874.

He prays the judgment of the Court whether he can be compelled to issue his warrant in favor of the petitioners upon the Treasurer for the sum of $229.50.

The petitioners demurred to the return.

The Code enacted in 1868, in chapter 14, contains this section :

"25. Out of the sum annually appropriated as a civil contingent fund there may be paid all the expenses incurred in the execution of any law for which there is no special appropriation, and any other sums which the Governor may deem necessary or proper. No payment shall be made out of the civil contingent fund, except on the requisition of the Governor directed to the Auditor."

Counsel for the petitioners argue that this section yet remains in force, and applies to that part of the act passed in February, 1873, appropriating the public money, which appropriates $600 to pay for the insurance of the capitol building and State library.

Chapter 2, of the Acts of 1872, contains this provision :

"There shall be a Janitor annually elected (at each annual session of the Legislature, by the joint vote of the two houses), whose term of office shall be for one year, and until his successor is elected or appointed, and qualified. It shall be his duty to properly guard and take care of the capitol buildings, with all the apartments therein, or therewith connected, as also the capi-

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

tol grounds, and have the same kept clean, warm and comfortable. He shall also, during the session of the Legislature, have charge of the halls and committee rooms of the two houses, and keep the same properly cleaned, warmed, and in good order, and shall do and perform such other duties in relation to his office of Janitor as either house or the Board of Public Works may require."

Chapter 111 of the Acts of the Legislature of 1872–3, entitled "An act making appropriations of the public money to pay general charges on the Treasury," approved April 7, 1873, contains these provisions :

"1. So much of the public taxes, and arrears of taxes, and all other sources of revenue, which have been received into the public treasury since the first day of October, 1872, and which may be received therein prior to the first day of October, 1874, which may be necessary to pay claims and charges upon the treasury, other than salaries of the officers of government, and pay of members and officers of the Legislature, shall constitute a fund for that purpose. No money belonging to any fund shall be taken for any other purpose than that for which it has been, or may be, appropriated or provided. And to that end there shall be, and is hereby appropriated, out of the fund from taxation and other sources of revenue, a sum sufficient to pay the following charges, payable out of the treasury during the fiscal year ending with the 30th day of September, 1873, and the 30th day of September, 1874, as follows : "

"25. * * * For the fiscal year ending the 30th day of September, 1874."

"29. To pay upon the order of the Governor, directed to the Auditor, all expenses in the execution of any law for which the Legislature has made no appropriation. And herein shall be included, all books, blanks and stationery and postage for the Governor, Auditor, Treasurer, Secretary of State, State Superintendent of Free Schools, Attorney General and Librarian, including ex-

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

press charges, to be paid upon the requisition of said officers, $10,000."

"31. To pay for gas, ice, water and other necessary charges; to take care of and preserve the public grounds and buildings, to be paid out of the contingent fund hereinbefore provided, and not in addition thereto, $200."

"32. To pay for fuel to be used by the janitor, to be paid out of the contingent fund hereinbefore provided, and not in addition thereto, $300."

"33. To pay for policy of insurance on capitol building and State library, to be paid out of the contingent fund hereinbefore provided, and not in addition thereto, $600."

"All such capitol building charges are to be paid upon the requisition of the officers having those matters in charge."

Though the language employed in these sections is in some respects inaccurate, we think it makes the legislative will intelligible—at least as far as it regulates the subject of this case.

Section 29 provides that all expenses in the execution of any law, for which the Legislature has made no appropriation, shall be payable on the order of the Governor. It then provides that all books, blanks, stationery, postage, and express charges, for the Governor, Auditor, Treasurer, Secretary of State, State Superintendent of Free Schools, Attorney General, and Librarian, shall be paid on the requisition of these officers. And it mentions ten thousand dollars as the sum appropriated for the payment of these expenses. After this, section 30 provides for the payment of clerks in different offices, and appropriates, for the purpose, various sums out of the general fund for the payment of claims and charges. Sections 31, 32 and 33, respectively, provide for the payment of charges for gas, ice, water, and other necessaries, and care and preservation of the public grounds and buildings, $200; for fuel to be used by the Janitor,

11

1874.
June Term.

Shields
and Preston
.v.
Bennett,
Auditor.

$300; and for insurance of the capitol building and State library, $600. Though these sums are specifically appropriated for these separate purposes, they are payable out of what is mentioned as the contingent fund. They are, however, segregated from the sum mentioned in section 29, and are independent of its provisions. And section 33, in the last paragraph, declares that all these capitol building expenses shall be paid on the requisition of the officers having those matters in charge.

Under these sections, it is plain that all expenses in the execution of any law for which the Legislature has made no appropriation, other than the expenses for stationery and other matters for the inferior State officers mentioned, are payable on the order of the Governor alone; and that the expenses of such articles for these officers cannot be paid without their own respective requisitions: But it is not clear whether these expenses are payable on the requisition of these officers alone, or only on their requisition with the Governor's order superadded. It is, however, unmistakable that the capitol building charges, including the expense of its insurance, are payable on the requisition of the officer having those matters in charge—and that if the Governor does not have them in charge, the expense of the insurance is not payable on his order. It is not so clear whether the charge for insurance of the State library is payable on the requisition of the officer having charge of the capitol building, with the insurance of which it is by the section connected, or on the requisition of the Librarian, having the library in charge.

If these certain sums, appropriated for these specified purposes, are not properly a part of a contingent fund, such as was contemplated by section 25 of chapter 14 of the Code, there is no pretense that that section applies to these sums. On the other hand, if they are properly deemed a part of such a contingent fund, then section 33 of the act of 1873 designates the officer upon whose requisition they shall be paid, and if that officer is not

the Governor, this section requires the payment on the requisition of a different officer; and the former law, to this extent, is incompatible with the latter, and therefore by necessary implication, is repealed.

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

The Constitution, in Article 6, contains these provisions :

" 30. No act hereafter passed shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof as shall not be so expressed, and no law shall be revived or amended by reference to its title only, but the law revived, or the section amended shall be inserted at large in the new act."

Counsel argue that, under these provisions, so much of chapter 111 of the act passed in February, 1873, making appropriations of public money, as designates the officer on whose requisition the appropriations to pay the expense of insuring the capitol building shall be paid, is void.

In legislative bodies, the connection of different measures having no relation to each other in one bill, in order to unite members of the Legislature who favored either, in support of all, was, before the adoption of constitutional provisions such as those contained in the section just quoted, a serious evil greatly needing correction. The failure to indicate in the title of the bill, the object intended to be accomplished by the legislation, especially when the bill was read, not fully, but merely by its title, the result of which was, that members who did not examine its contents, often voted without a knowledge of its object, was likewise such an evil.

Provisions similar to those of the present Constitution, in question, except the qualification as to acts, a part but not all the objects of which are expressed in the title, were adopted in Virginia, as a part of the Constitution that took effect in 1852 ; and the first of them was again

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

adopted in the Constitution of this State that took effect in 1863.

These regulations are well adapted to the correction of the evils at which they are aimed. But, whether, if the provision that requires the object of an act to be expressed in the title, be strictly construed, it will not produce greater evil, is a question for careful and deliberate consideration. We do not extend this suggestion to the provision which directs that no act thereafter passed shall embrace more than one object; because, as we will notice, the qualification of that provision in the present Constitution, averts the mischief which, without the qualification, it might accomplish. The detail of preparing and passing a separate act for every object of legislation is so distasteful to most law makers; the practical discrimination between what are elements or incidents of the substantive object of an act, and what are materially different objects, is so perplexing; and the accurate expression of the object of an act in the few words which convenience as well as immemorial usage has allowed to the title, is so difficult, even to the most competent and careful legislators; that in many acts heretofore passed, exact compliance has not been, and in others hereafter passed, we fear, will not be attained. These provisions, contemplated in connection with the imperfect compliance with their literal requirements in Virginia and this State, since their adoption, have been the occasion of much embarrassment to legislators and jurists, and of grave apprehensions to citizens interested in the efficacy of statutes and the security of persons and property.

The literal restriction, in the present Constitution, of these provisions, to acts thereafter passed, and the displacement of the former Constitution by the new one, perhaps, may relieve previous legislation from the embarrassment of such provisions in former Constitutions, except so far as under their operation rights may have vested. But this we do not now consider.

The provision in this Constitution, in effect, that if any

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

object shall be embraced in an act, that is not expressed in the title, the act shall be void as to so much as embraces such object—but as to that only—implies the important declaration, that the prohibition to embrace more than one object in the same act, is merely directory;—and that, though an act embraces several objects, if all or any of them be expressed in the title, the act, otherwise properly passed shall be valid as to the objects expressed.

In two states, having in their constitutions a provision that no law shall embrace more than one subject, and that this shall be expressed in the title, the courts have held, in effect, that the provision was merely directory to the members of the Legislature, and operative only on their consciences;—and that the failure to comply with it did not impair the validity of the legislative act. But such construction of the provision in the Constitution of this State, that the object of an act shall be expressed in the title, is excluded by the explanatory provision, that the act shall be void only as to so much as shall not be expressed in the title. The action of these courts, however, shows that their apprehension of mischief from the provisions in question was so strong as to influence them to disregard the fundamental principle generally recognized and applied, that whatever is prohibited by a constitution, if in fact done, is ineffectual.

In a number of states having provisions exactly or substantially similar to our own, on this subject, the courts have construed them liberally, so as to sustain the validity of the statutes. In this State, the late Supreme Court of Appeals consisting of three Judges, one of whom dissenting, in a late case, construed the provision relative to the title, more inimically to the validity of statutes impugned on this account, than any other court whose action on the subject we have seen. But that case —if the construction adopted by the majority of the Court be law—is not close enough in its analogy to this, to furnish a precedent for its decision.

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

The question whether the object of an act is expressed in the title, is determined by a comparison of the act and the title,—and is not influenced by any former law which the later act, if valid, expressly or by implication, repeals.

Without venturing to declare any uniform rule, or suggest any general principle as to the precision or completeness with which, under the provision in question, the object of an act must be expressed in the title, in order to the validity of the act, we may say with propriety, that, in our opinion, while the most liberal construction favorable to the validity of legislation which the language admits, will be sufficient to suppress the evil against which it is directed, such construction will be most conducive to the quiet and security of rights, generally deemed valid—an object which the law ought always, as far as justly practicable, to effectuate. And we will add. —as a proposition that will more than control the decision of the question now in consideration—that when the principal object of an act is expressed in the title, and the act embraces with such principal object, other auxiliary objects, the act, if not otherwise objectionable, is valid, not only as to the principal but likewise as to the auxiliary objects.

A title is generally a brief statement of the subject of an act. If, under the constitutional provision, there be any material difference between the subject and the object of an act, then, as we have seen, it is not enough, in this State, to express the subject, but is indispensable to express the object in the title, in order that the act may be valid. Still, brevity is a prevailing attribute in the character of a title. Consequently, its language should be construed in the most comprehensive sense :—Though it may be questionable whether the words of a title should be held to be more comprehensive than the same words when used in the body of the statute to which the title relates.

In the largest sense of the language, the making of an appropriation may comprehend the payment of the

1874
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

money set apart. But whether, strictly, it can mean this or not, the appropriation is nothing, in effect, without the means of obtaining the payment. The appropriation implies the means. When, in the title of an act, an appropriation is mentioned as its object, what is necessary to obtain the payment is implied as indispensable to the efficacy of the appropriation.

As we have seen, in the title of the act passed in 1873, the object expressed is to appropriate the public money to pay general charges on the government. On the principle we have stated, this is a sufficient expression of the object of the act to sustain the provision indicating the officer on whose requisition the money should be paid.

In a large number of acts passed in Virginia, and in this State, since the Constitution adopted in 1851 took effect in 1852, that have been, by the courts and the people, recognized and acted on as valid laws protecting the persons and securing the property of citizens, the respective objects of the acts are not expressed in the titles as adequately as the object of the act before us is expressed in the title of this act. It is by no means clear that in the title of the act establishing a Code of Laws for this State, passed in 1868, any actual object is expressed as satisfactorily as the object of this act is expressed in this title. And we have no assurance that legislation in this respect will receive more attention in the future than it has in the past. To hold that section 33 of the act, appropriating public money, is void as to the designation of the officer on whose requisition the money is payable, would furnish a precedent for the construction of other statutes on different subjects, the observance of which would probably subvert private and public rights and interests to an extent that it is fearful to conjecture.

The provision that no law shall be revived or amended by its title, but the law revived or the section amended shall be inserted at large in the new law, does not relate to the repeal of a law either by express words, or by the enactment of a subsequent law with which the former is

inconsistent—by which it is necessarily displaced. And the provision does not require that, when a section is amended, the act amending it shall recite or show on its face that it does so, or that it shall in any manner indicate that any such section previously existed.

The purpose of this provision is to inhibit the revival or amendment of a law by mere reference to its title, and to require that an act of the Legislature shall state on its face the law that it constitutes. As the Legislature, when it thinks proper, may change the existing laws, or make new ones, and two inconsistent laws cannot at the same time regulate the same subject, the former necessarily ceases to be law while the latter prevails.

The act passed in February, 1873, making appropriations of public money, does not revive or amend any act by its title. If any part or element of section 25 of chapter 14 of the Code, or any other provision of any act, is continued in force by chapter 111, of the Act passed in 1873—a question not material in the consideration of this branch of the subject—such part or element as well as the new matter with which it is combined and embodied is inserted at large in the act. The Constitution does not require more. As far as any former law is inconsistent with this statute, it can no longer be effectual. If the provision of section 25, that no money shall be drawn from the contingent fund without the requisition of the Governor, can apply to the special fund withdrawn from the general contingent fund—or what is so called —and appropriated to the insurance of the capitol building and State library, and chapter 111 requires that this fund be paid on the requisition of one or more officers other than the Governor, then the latter act by necessary implication repeals the former provisions to the extent of their incompatibility, and the Constitution does not avoid or impair the efficacy of the legislative act.

The Constitution, in Article 7, contains this well known section :

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor..

"5. The chief executive power shall be vested in a Governor, who shall take care that the laws be faithfully executed."

This section embodies two provisions that were separately contained in the last two Constitutions of Virginia adopted before the formation of this State, and in the first Constitution of this State, and are found in the Constitutions of most of the States of the Union.

Counsel argue, or at least suggest, that the provision that the Governor shall take care that the laws be faithfuly executed, in connection with the act passed in 1873, that apropriates money to insure the capitol building, authorizes the Governor to procure the insurance and order its payment.

If this provision authorizes the Governor to insure the capitol building, it requires him to do so. It confers no authority other than what is implied in the imposition of the duty. It was contemplated in the formation and adoption of the respective Constitutions of Virginia and West Virginia, and, it is supposed, those of other States, that where the instrument did not constitute the law and indicate who should enforce it, the Legislature should not only enact laws for the regulation of the government and society, but should provide or specify the officers who should execute them. It was not intended that the Legislature should merely declare the laws, and leave the Governor to enforce them. The provision which requires that the Governor shall take care that the laws be faithfully executed does not generally, if ever, make it the duty of the Governor himself to execute the laws. But, as the language imports, it makes it his duty carefully to observe the manner in which the different officers of the government exercise their proper functions and execute the laws committed to their charge, or their failure to perform such duties; and when they fail to act, or act improperly, if he has the power to remove them from office, to do so; or if he has not, to bring the subject to the cognizance of that department of the government which

12

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

has the power to remove or punish them. A distinct provision authorizes the Governor to call the military to enforce the execution of the laws; but it does not require him to do so, except when their execution by the proper civil officers is resisted by force too powerful to be otherwise overcome.

We have found but one case decided in any of the States in which the provision in question was relied on as authority for any action of a Governor; and in that case it was held that the provision did not sustain the action.

The Legislature may require the Governor to perform other duties than those specified in the Constitution, not incompatible with his dignity and constitutional functions. But whether, in any case, when the Legislature provides that a public act shall be done, yet fails in any manner to indicate the officer by whom it shall be performed, the provision that the Governor shall take care that the laws be faithfully executed, requires the Governor himself to do the act, and if so, in what cases, are questions of interest and importance which we do not decide. Certainly, however, it will not be presumed, in the construction of a doubtful statute, that, because of this constitutional provision, a Legislature, purposely or otherwise, fails to indicate an officer to do what it requires to be done. On the contrary, whenever the language of legislation can be understood to indicate such an officer, it will be construed to do so.

When the Legislature requires another officer to perform a public act, we scarcely need say the Governor has no authority to perform it.

There is no peculiar fitness in the Governor's insuring the capitol building or having any special charge of its insurance. Though the Legislature, in 1872, appropriated money for the insurance of the building for the years ending respectively in 1872 and 1873, we do not learn that the Governor procured or ratified the insurance, or made any requsition or order for the payment of the pre-

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

miums. So that neither the character of the duty, nor the action of the Governor and Auditor, indicates the understanding that the Governor ought to have, or in fact did have charge of the insurance; or in any way furnishes a reason to presume that section 33 of the act passed in 1873 relative to the officer who should procure the insurance referred to the Governor.

Counsel object to a construction of this section, that attributes or assigns to the Janitor the duty of procuring or approving the insurance of the capitol building, because, as urged, he is not a fit officer for the purpose, and keeps no record.

At the time when the act in question was passed, and when the order for the payment of the insurance was drawn, the Janitor was—as he now is—an officer of the State, with assistants, receiving an annual salary, and for a part of the year a further per diem compensation, such as to invite the services of a person of more than ordinary intelligence and integrity. By the statute, it is made his duty to guard and take care of the capitol building, with all the apartments in or connected with it. His trust, in the custody of the apartments in the capitol, including the furniture, records, and public documents, is important; and his character ought to be equal to the trust. Compared with these duties, that of procuring the insurance of the capitol building, or of approving it when the State House Company has procured it as the Governor has done, is but trivial. The act requires no record. The Auditor preserves the requisition in his office, as a voucher for the payment, and the State House Company, for whose benefit the property is insured, preserves the policy of insurance. But if it be proper that the Janitor keep a record or account of this and other matters in his charge, there is no reason why he should not to do so.

If the care of the capitol building does not necessarily imply the procurement or approval of the insurance, when an appropriation for insurance is made, neverthe-

1871.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

less the two functions are so closely connected, as naturally to be united in thought and language. Here the Legislature has provided that a janitor shall be elected and paid, and that he shall take care of the capitol building, and has appropriated money to pay for the insurance of the capitol building and State library, and has declared such capitol building charges shall be paid on the requisition of the officers having those matters in charge. We are all of opinion that the Legislature did not intend to make the charges mentioned payable on the order of the Governor; and three of us are of opinion that by these provisions the Legislature intended and effectually enacted, that the charges should be paid on the requisition of the Janitor.

The provision in section 31, appropriating money to pay for gas, ice, water and other necessaries, and care of the public grounds and buildings, and that in section 33, appropriating money to pay for insurance of the capitol building, are similar; and the provisions in the separate paragraph at the end of the latter section, that all such capitol building charges shall be paid on the requisition of the officers having those matters in charge, has the same relation to each of these antecedent provisions. If, under the constitutional and statutory provisions that have been discussed, or any of them, it be the duty of the Governor to procure the insurance of the capitol building, it is likewise his duty to purchase the gas, ice, water and other necessaries. If it is not his duty to purchase these articles and make his requisition for payment, it is not his duty to procure or approve the insurance of the capitol building or to make his requisition for the payment of charges therefor. We cannot readily construe the law to require the Governor to purchase the necessaries mentioned; and unless we do so, we cannot construe it to require him to procure the insurance. On the other hand, if the law requires the Janitor to purchase the gas, ice, and water, it requires him to procure the insurance of the capitol building, and to make his requisi-

tion for the charges of all.   So that any construction of
these laws other than that which we adopt would lead to
absurdity.

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

Counsel argue that, even if the Governor had no au-
thority to make the order to the Auditor to issue his
warrant on the Treasurer for the money to pay the char-
ges on the insurance, yet the Auditor was concluded by
the order, and was bound to make the payments; and
that this Court should compel him to do so.     .

But, as the Governor had no authority to make the
order and the Auditor was not authorized upon his or-
der to pay the money appropriated for the insurance of
the capitol building, it is self-evident, that if this Court
has, and may in this form, exercise jurisdiction of this
case, it cannot compel the Auditor to issue the warrant.
The action of the Governor is invalid, whether the
Janitor has authority, or has acted on the subject, or not.
But the Janitor has the authority to do so, and has
procured the insurance and made his requisition in fa-
vor of the insurers, and the Auditor has issued his war-
rant in their favor for the payment of the premiums.

The Attorney-General suggests that this Court can-
not, by *mandamus*, compel the Auditor who has exercis-
ed his judgment, to act in opposition to it:   That the
proceeding is in effect against the State, and not author-
ized:   And that the mere agents of the insurance com-
panies cannot maintain *mandamus* to obtain money once
payable to the companies, which has been by the agents
voluntarily paid to the companies.   But we are not re-
quired to consider these questions in order to dispose of
this case.

The return to the *mandamus nisi* is sufficient, the de-
murrer thereto is overruled, a peremptory *mandamus* is
refused, the petition is dismissed, and costs are awarded
to the defendant against the petitioners.

HAYMOND, PRESIDENT, and PAULL and MOORE,
JUDGES, concur in the foregoing opinion, as well as the

1874.
June Term.

Shields
and Preston
v.
Bennett,
Auditor.

points decided and the judgment rendered;—except that PAULL, JUDGE, thinks the capitol building charges were omitted in the legislation on the subject, and were not payable on the order of the Governor or the requisition of the Janitor or any other officer.

RETURN TO THE MANDAMUS NISI ADJUDGED SUFFICIENT, DEMURRER TO RETURN OVERRULED AND PEREMPTORY MANDAMUS REFUSED.