## ARMOUR BROS. BANKING CO. *v.* BOARD OF COUNTY COM'RS OF FINNEY COUNTY.

*(Circuit Court, D. Kansas. February 4, 1890.)*

ELECTIONS—MAJORITY VOTES—ASSESSMENT OF SPECIAL TAX.

Under Comp. Laws Kan. 1885, § 3759, relating to the purchase of lands for a poor-farm, and providing that "to raise the sum necessary for the purchase of land * * * the board of county commissioners * * * shall have power to assess a tax * * * not exceeding $500, unless the amount of taxes to be assessed shall be submitted to a vote of the people at some general election, and a majority of all the votes cast, at a poll opened for that purpose, shall be in favor of such assessment." it is sufficient if the proposition receives a majority of all the votes cast on that particular proposition, and it is not necessary that it should receive a majority of all the votes cast at the election.

At Law.

*Geo. R. Peck, A. A. Hurd,* and *Robt. Dunlap,* for plaintiff.
*H. F. Mason* and *Johnson, Martin & Keeler,* for defendant.

FOSTER, J. The plaintiff brings suit against the board of county commissioners of Finney county to recover the sum of $12,480, evidenced by 25 warrants or orders made by said board of county commissioners on the treasurer of said county, of which the following is a copy:

"No. 1,374.          COUNTY CLERK'S OFFICE.          $500.00.
"GARDEN CITY, KANSAS, Jan. 11, 1887.

"*Treasurer of Finney County, Kansas:* Pay to A. H. Burtis or bearer the sum of five hundred dollars for part payment of part of N. E. ¼, and lot 3 of S. E. ¼, of Sec. 15, T. 24, R. 33 W., to be paid as per special tax voted Nov. 2, 1886. By order of the board of county commissioners.

"A. H. BURTIS, Clerk.          G. W. WRIGHT, Chairman.

"[Indorsed:] Presented for payment, but not paid for want of funds, this 15th day of January, 1887.          D. R. MENKE, County Treasurer.

"Registered No. 12."

This case is submitted to the court on an agreed statement of facts, the material part of which is as follows: At the regular general election held on November 2, 1886, there was submitted to the voters of Finney county a proposition by which an amount of taxes, to be assessed for the

purchase of a poor-farm, should be raised; that at such election votes were cast in favor of and against said proposition at the same polls, and in the same ballot-boxes, wherein the votes for county and state officers were cast; that at said election 2,887 votes were cast by voters of Finney county for the various candidates for county and state offices; that at said polls at said time there was also cast, in favor of the proposition to assess taxes for the purposes above referred to, 1,133 votes, and against the proposition 394 votes; that the said votes were duly canvassed by the board of county commissioners, and it was declared that the said proposition had carried by a majority of 739 votes. Thereafter said board of county commissioners advertised for bids or offers to sell said county lands for a poor-farm. Among other bids sent in, there was one by A. H. Burtis, and, his being the best offer, the county commissioners purchased his said farm, and said Burtis executed to said commissioners a deed of general warranty therefor, and said county now owns and holds said land. In payment therefor the said board of county commissioners issued to said A. H. Burtis, on the 11th day of January, 1887, the said warrants or orders before referred to. Said Burtis afterwards sold and transferred said warrants to the plaintiff in this case, which is a corporation organized and existing under the laws of the state of Missouri, and this action is brought upon said warrants or orders. The law under which the election was had is as follows:

"To raise the sum necessary for the purchase of land, and the erection and furnishing of the buildings for such asylums, the board of county commissioners in the several counties shall have power to assess a tax on property liable to taxation for raising a county revenue, not exceeding five hundred dollars, unless the amount of taxes to be assessed shall be submitted to a vote of the people at some general election, and a majority of all the votes cast, at a poll opened for that purpose, shall be in favor of such assessment." Comp. Laws 1885, § 3759.

The only question involved is a construction of said section. Does it mean a majority of all the votes cast, or a majority of all the votes cast on that subject? There were 2,887 votes cast for county and state officers at said election, and only 1,527 on the matter of buying a farm and raising an assessment to pay for the same,—1,133 votes in favor, and 394 against. The defendant insists that, to justify the board of county commissioners in contracting the debt, it should have received a majority of all the votes cast at said election, while the plaintiff insists that only a majority of all the votes cast on that subject was required. The law says: "Unless the amount of taxes to be assessed shall be submitted to a vote of the people at some general election, and a majority of all the votes cast at a poll opened for that purpose shall be in favor of such assessment." The words, "a majority of all the votes cast," do not mean cast at a poll opened for the purpose of a general election, but cast for the purpose of such assessment, at a poll opened for that purpose. If the meaning had been otherwise, instead of saying, "at a poll opened for that purpose," the words "at said election" after the word "cast" would have clearly expressed the meaning defendant contends for.

It is probable the law contemplates a separate poll or ballot-box, but undoubtedly the same poll could be used as was used for county and state officers. Reading the statute in this manner solves the problem. The following authorities amply support the conclusion that only a majority of the votes cast on the subject of the assessment were required: *Commissioner* v. *Winkley*, 29 Kan. 36; *State* v. *Echols*, 20 Pac. Rep. 523; *Cass Co.* v. *Johnston*, 95 U. S. 369; *Walker* v. *Oswald*, 11 Atl. Rep. 711; *Gillespie* v. *Palmer*, 20 Wis. 572; *Sanford* v. *Prentice*, 28 Wis. 358. My attention has been called by defendant to the case of *Jones* v. *Lancaster Co.*, 6 Neb. 474, and *State* v. *Winkelmeier*, 35 Mo. 103. These cases are in conflict, to some extent, with the cases before cited, but are not in conflict with our views in the case at bar, inasmuch as the statutes were entirely different. The Nebraska constitution provided as follows:

"The legislature shall provide, by general law, for township organization, under which any county may organize whenever a majority of the legal voters of such county voting at any general election shall so determine." Article 10, § 5.

It will be observed the words used are, "a majority of the legal voters of said county." The Missouri statute used the words, "when authorized by a majority of the legal voters of the respective cities." No such words are used in the Kansas statute, under which this vote was had. Under similar provisions as the Nebraska and Missouri acts above referred to, the cases first above cited hold that the assent of those not voting on the subject was to be presumed by their silence to the action of the majority. It is not necessary for this court to discuss the different views expressed by the several courts in those cases, as this statute only requires a majority of the votes cast for the purpose of the assessment, and for that purpose there is a majority of 739 votes; so the defendant had full authority to issue the orders sued upon, and judgment must go for the plaintiff.