[S. F. No. 3870.   In Bank.—August 15, 1904.]

## HERBERT E. LAW, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

BONDS FOR MUNICIPAL IMPROVEMENTS—SAN FRANCISCO CHARTER—TITLE OF ORDINANCE.—The provision in the charter of the city and county of San Francisco that "an ordinance shall embrace but one subject, which shall be expressed in its title," is directory. But an ordinance providing for the issuance, sale, and redemption of bonds in an aggregate sum, distributed specifically in the title, in aid of ten specified municipal improvements, embraces but one subject— that of the incurring of a bonded indebtedness for specified distinct purposes, all of which are properly set forth in the title and in the ordinance itself, and all of which are germane to the general subject submitted to the voters—the expediency or inexpediency of bonding the city for specified public improvements.

ID.—BONDS FOR SEWER SYSTEM—CONSTRUCTION OF CHARTER.—All of the provisions of the charter upon the subject of a sewer system are to be considered as a whole, and to be construed harmoniously. A provision for a special fund for "the construction of a general system of drainage and sewerage" does not constitute an exclusive mode by which sewers may be constructed in the city. The phrase "improvement or improvements" includes the construction of sewers, and the provision in the charter for submitting to the voters the question of a bonded indebtedness for an "improvement or improvements," in the emergency specified, authorizes the submission of the question of "bonds for the construction of a sewer system," where the expenditure proposed will exceed the amount annually provided by taxation for the special fund.

ID.— BONDS FOR PARKS FOR CHILDREN'S PLAYGROUNDS.— The right being unquestioned to provide for bonds for the acquisition of lands for park purposes, it is a legitimate part of park purposes to acquire "lands for public parks to be used as children's playgrounds."

ID.—BONDS FOR SCHOOLHOUSES— "MUNICIPAL AFFAIR" — EFFECT OF CHARTER—GENERAL IMPROVEMENT ACT.—The issuance of bonds for the repair of existing schoolhouses and for new schoolhouses is for a "municipal affair," within the meaning of section 6 of article XI of the constitution. Schoolhouses are municipal buildings, and their erection is within the functions of municipal government. The charter provisions for a bonded indebtedness for municipal improvements, including schoolhouses, must prevail on that subject over the General Improvement Act of 1891, so far as there may be any conflict between them.

ID.—ELECTION FOR ACQUISITION OF LAND—CONSTRUCTION OF CHARTER.— The charter provisions in regard to an election for the acquisition

of land must be construed in harmony. The provisions of section 21 of chapter 1 of article II of the charter, in reference to submitting to the voters an ordinance for the purchase of land exceeding fifty thousand dollars in value at the ensuing municipal election, contemplates a specific purchase of particular land with available funds, and the submission merely of the question of the wisdom and propriety of buying the land. Those provisions do not conflict with the provisions of section 29 of article XVI of the same charter for a special election for a bonded indebtedness for the acquisition of any land or lands in the case specified therein.

ID.—AMOUNT OF BONDED INDEBTEDNESS—PERCENTAGE OF APPRAISEMENT. —A provision for a bonded indebtedness in the total amount of $17,771,000 cannot violate the charter provision preventing such indebtedness in an excess of fifteen per centum of the assessed value of all real and personal property, where it appears that such assessed value exceeds $420,000,000, and that the municipality has no other bonded indebtedness.

ID.—IMMATERIAL VARIANCE—CHANGE IN DENOMINATIONS OF BONDS— CHARTER NOT VIOLATED.—Where the same number of bonds of all denominations appears in the ordinance providing for a special election, and in the subsequent ordinance for the issuance, sale, and redemption of the bonds, the fact that in some instances the denominations of the bonds were changed in the latter ordinance, though in no instance did the denominations fail to conform to the requirements of the charter that no bonds shall be issued of a less denomination than ten dollars or greater than one thousand dollars, the variance is immaterial.

ID.—FAILURE OF REQUISITE VOTE UPON ONE BOND ISSUE—OTHERS NOT AFFECTED.—Under the charter of the city and county of San Francisco a bond issue for a special purpose fails if the requisite vote of two thirds of all the electors voting at the special election were not cast therefor, notwithstanding more than two thirds of the electors voting upon that particular question were cast in its favor. But the failure of one bond issue to carry does not affect the validity of the others which received the requisite number of votes.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

Henry C. McPike, and Edgar C. Chapman, for Appellant.

Percy V. Long, City Attorney, and W. I. Brobeck, Assistant City Attorney, for Respondents.

HENSHAW, J.—Plaintiff, a taxpayer of the city and county of San Francisco, brought this action to restrain the

municipal authorities from issuing any of the $17,771,000 of bonds voted for municipal improvements. This bond issue was declared carried at an election held for the purpose, and the petitioner's attack is directed principally to alleged irregularity of the proceedings of the board of supervisors. A demurrer to the petition was sustained without leave to amend. Judgment thereupon followed in favor of defendants, and plaintiff appeals. No complaint is made of the court's refusal to allow amendments to the petition, but it is contended that the petition states a cause of action, and that the order sustaining the demurrer was therefore erroneous.

1. The first point raised against the validity of the proposed issue is, that the ordinance providing therefor is void in attempting to legislate upon more than one subject,—namely, the issuance of bonds for ten different distinct purposes or subjects. The title of the ordinance in question is as follows:—

"BILL No. 1283.
"ORDINANCE No. 1114.

"Providing for the issuance, sale, and redemption of bonds of the city and county of San Francisco to the amount of seventeen million seven hundred and seventy-one thousand dollars ($17,771,000) for the following purposes, to wit: One million dollars ($1,000,000) for the construction of a new city and county hospital; seven million two hundred and fifty thousand dollars ($7,250,000) for the construction of a sewer system; three million five hundred and ninety-five thousand dollars ($3,595,000) for the construction of new schoolhouses, of improvements to existing schoolhouses, the acquisition of lands for erecting thereon new schoolhouses, and also for additional lands for playgrounds for established schools; one million six hundred and twenty-one thousand dollars ($1,621,-000) for the repair and improvement of the accepted streets of the city and county; six hundred and ninety-seven thousand dollars ($697,000) for the construction of a new county jail, to construction of additions to the Hall of Justice, and the acquisition of lands for the construction thereon of said county jail, and additions to said Hall of Justice; one million six hundred and forty-seven thousand dollars ($1,647,000) for the construction of a building to be used as a 'public library and reading-rooms' and the acquisition of land for the construction thereon of said building; seven hundred

and forty-one thousand dollars ($741,000) for the acquisition of lands for public parks to be used as children's playgrounds; three hundred and thirty thousand dollars ($330,000) for the acquisition of lands for the extension of Golden Gate Park northerly between Thirteenth and Fourteenth avenues to the Presidio Military Reservation; five hundred and ninety-seven thousand dollars ($597,000) for the acquisition of lands for an additional public park in that portion of the city and county known as 'Telegraph Hill'; two hundred and ninety-three thousand dollars ($293,000) for the acquisition of lands for an additional public park in that portion of the city and county known as the 'Mission,' in accordance with the result of a special election held in said city and county September 29, 1903.''

The charter of the city and county of San Francisco provides (art. II, chap. I, sec. 2) :—

''An ordinance shall embrace but one subject, which shall be expressed in its title. If any subject be embraced in an ordinance and not expressed in its title, such ordinance shall be void as to so much thereof as is not expressed in its title.'' This provision of the San Francisco charter has been taken *verbatim* from section 24 of article IV of the present constitution of this state, which in turn was adopted from section 25 of article IV of the earlier constitution of 1849. This provision of the constitution of 1849 repeatedly came before this court for construction, and was uniformly held to be directory merely, and persuasive only to the minds and consciences of the legislators. ''We regard this section of the constitution as merely directory.'' (*Washington* v. *Page,* 4 Cal. 388.) ''Except in so far as the provision may influence the official action of individual members of the legislature the constitution shall be read as if the provision referred to had never been written in it.'' (*In Matter of Boston M. and M. Co.,* 51 Cal. 624.) Nor was this construction peculiar to this state. In other states where like provisions existed the same construction was given by the courts. (*Shields* v. *Bennett,* 8 W. Va. 85; *Pine* v. *Nicholson,* 6 Ohio St. 176.) When the constitution of 1879 became the organic law of the state it contained a section not found in the earlier one. Section 22 of article I declares that ''The provisions of this constitution are mandatory and prohibitory unless by express words they

are declared to be otherwise.'' Under the compulsion of this section alone, this court declared the provision to be mandatory. (*Ex parte Liddell*, 93 Cal. 633.) There is no mandate in the charter of the city and county of San Francisco corresponding to that of the constitution of this state, and therefore it might well be sufficient upon this subject to declare, in accordance with the uniform construction of such provisions, that it is directory to the legislative body alone, and not a subject of judicial cognizance. But it may be further added that, even if the provision be regarded as mandatory, the ordinance in question is not violative of it. But one subject is embraced in the ordinance—that of the incurring of a bonded indebtedness for specified purposes. The purposes, it is true, are distinct, and are set forth—as properly they should be—distinctly and separately in the title and in the ordinance itself, but they are all germane to the general subject to be submitted to the voters—the expediency or inexpediency of bonding the city for specified public improvements. The purpose of the enactment, as declared by this court, is ''merely to prevent legislative abuses or the passage of acts bearing misleading or deceitful titles, or titles which give no indication of the matters contained therein.'' (*Ex parte Liddell*, 93 Cal. 633; *Beach* v. *Von Detten*, 139 Cal. 465; *People* v. *Mullender*, 132 Cal. 420; *People* v. *Superior Court*, 100 Cal. 105.) ''It was never designed,'' says the supreme court of Nebraska, ''to place the legislature in a straight-jacket and prevent it from passing laws having but one object under an appropriate title.'' (*K. C. & O. R. Co.* v. *Frey*, 30 Neb. 790.) And ''the title of an act is not open to attack because it is comprehensive in its scope, provided the numerous provisions having one general object are germane to the single subject of the act.'' (*Abell* v. *Clark*, 84 Cal. 226; *People* v. *Parks*, 58 Cal. 624; *Ex parte Kohler*, 74 Cal. 38; *Hellman* v. *Shoulters*, 114 Cal. 136.) The circuit court of the United States in *Geer* v. *Commissioners of Ouray County*, 97 Fed. 435, has well said: ''The object of this constitutional provision was twofold; it was to prevent surreptitious legislation, the insertion of enactments in bills that were not indicated by their titles, and to forbid a treatment of incongruous subjects in the same act. It was never intended to prevent the legislature from treating all the various branches of the

same general subject in one law, or from inserting in a single act all the legislation germane to its general subject.'' And in the numerous authorities which that court cites in support of its declaration will be found many cases evidencing a much wider departure from the letter of the provision than is shown by the ordinance in question, while that case itself is identical in principle with the one at bar. There the act called for the issuance of bonds for two distinct purposes— one to refund an existing indebtedness evidenced by bonds, and the other to issue bonds to fund an indebtedness evidenced by judgments, and it was held—as in this case it is held— that the distinct subjects were germane to the general one,— namely, the proposition of incurring or not incurring a bonded indebtedness for indicated purposes.

2. It is contended that so much of the ordinance as provides for the issuance of bonds for a sewer system is void. Herein it is set forth that section 22 of article II of chapter 2 of the charter of San Francisco provides as follows: ''The board of supervisors shall have power to provide in the annual tax levy for a special fund to be used in the construction of a general system of drainage and sewerage.'' It is argued that this is the declaration of a mode, and of the exclusive mode, by which sewers may be constructed within the city. But all the provisions of the charter, under familiar rules of construction, are to be taken as a whole, and are to be construed harmoniously. Section 29 of article XVI of the same instrument provides: ''When the supervisors shall determine that the public interest requires the construction or acquisition of any permanent building or buildings, improvement or improvements, land or lands, the cost of which in addition to the other expenses of the city and county will exceed the income and revenue provided for the city and county for any one year, they must by ordinance submit a proposition or propositions to incur a bonded indebtedness for such purpose or purposes to the electors of the city and county at a special election to be held for that purpose only,'' etc. The phrase ''improvement or improvements'' includes the construction of sewers. This is not even debatable, for, as was said in *McHugh* v. *San Francisco*, 132 Cal. 381, ''By the facts disclosed upon this appeal there is no question whatever but that bonded indebtedness is to be created for the purpose

of acquiring 'permanent municipal buildings and improvements.' Schoolhouses, sewers, etc., come directly within that classification.'' Section 29, above quoted, in the case last cited, was expressly interpreted by this court as conferring power upon the municipality to issue bonds for sewer construction. The simple and natural construction—indeed, the obvious construction of the two sections—is, that they are not in conflict, but afford distinct methods to be used within the discretion of the supervisors as the circumstances justify—the one to construct such sewers as may be built out of funds derived from the annual revenues within the dollar limit, the other, where the expenditure will exceed such an amount as thus may be reserved, to issue bonds for the construction of a general system of sewerage and drainage.

3. The ordinance provided ''for the acquisition of lands for public parks to be used as children's playgrounds.'' Appellant does not contest the right of the municipal authorities to acquire lands for public parks, but insists that to acquire lands for public parks for children's playgrounds is beyond the power of the municipal authorities, and therefore void. No person will question the wisdom or benefit of such acquisition in a densely crowded municipality like San Francisco, and such playgrounds are the breath of life to thousands and tens of thousands of the city's children. No authority is cited by appellant, and it may be confidently asserted that none can be found, sustaining the contention that the use of such parks for such purposes is in any wise unlawful. The right to acquire the land for park purposes being undisputed, if after their acquisition one should contest the use proposed to be made of them upon the ground that it would be illegal, and such contention were sustained, the result would be merely to limit the use strictly to park purposes. We are of the opinion that lands may be acquired for park purposes, and that it is a part of park purposes to devote some of those lands to children's parks. The general public is not thereby denied access to, and the use of, these lands, and with as little justice can be heard to complain of the use made of them as could the children, because in other parks were provided for adults, pleasures by way of speed-tracks, automobile-roads, and bicycle-paths, in the enjoyment of which they could not share.

4. It is contended that the provisions of the ordinance call-

ing for a bonded indebtedness for the erection of new school-houses, of improvements to existing schoolhouses, for the acquisition of land for these purposes, and of additional land for playgrounds of established schools, are invalid, "for the reason that education is a state affair and not a municipal affair." No authority is cited in support of this contention, but, to the contrary, in the case of *In re Wetmore*, 99 Cal. 151, it is decided that the above-named objects are "municipal affairs" within the meaning of section 6 of article II of the constitution, which provides that the charters of cities heretofore or hereafter organized shall be subject to and controlled by general laws, except in municipal affairs. The language of this court in *In re Wetmore*, 99 Cal. 151, is as follows: "As schoolhouses are essential aids in the promotion of education, their erection is but incidental to the maintenance of the schools, and falls as completely within the functions of a municipal government as does the erection of a hospital for its indigent poor, or buildings for its fire-engines; and the school-buildings when so erected are as fully municipal buildings as are its engine-houses and hospital buildings." It follows, therefore, that the city authorities were justified in calling for a bonded indebtedness for the indicated purposes, and that the charter provisions in this regard supersede the requirements of the General Improvement Act of 1901 (Stats. 1901, p. 27), should conflict be found to exist between the two.

5. It is contended that the ordinance providing for bonds for the acquisition of lands is void for a failure to follow the provisions of section 21 of chapter 1 of article II of the charter, as follows: "Except as otherwise provided in the constitution of the state, or as otherwise provided in this charter, every ordinance . . . for the purchase of land of more than fifty thousand dollars in value, must be submitted to the vote of the electors of the city and county at the election next ensuing after the adoption of such ordinance." But section 29 of article XVI of the same charter declares: "When the supervisors shall determine that the public interest requires the construction or acquisition of any . . . land or lands, the cost of which, in addition to the other expenses of the city and county, will exceed the income and revenue provided for the city and county for any one year, they must

by ordinance submit a proposition or propositions to incur a bonded indebtedness for such purpose or purposes to the electors of the city and county at a special election to be held for that purpose only.'' The bond proposition was submitted to the electors in accordance with this section at a special election called for that purpose. The contention of appellant is, that the question of the acquisition of lands should have been submitted at the next ensuing regular election following the adoption of the ordinance. These charter provisions, as we have said, are to be read and construed in connection with each other, and so reading them there is no conflict between the provisions, and their meaning is quite plain. Whenever the public interest requires the acquisition of any land, and its purchase will exceed the moneys available out of the income of any one year, the supervisors ''*must*'' submit the proposition to incur a bonded indebtedness for this purpose at a special election, held for that purpose only; but where funds are available from the income of any one year for this purpose (so that a bonded indebtedness is not necessary), and where the purchase price will exceed the sum of fifty thousand dollars, the conditions are radically changed. The money is in hand and available, and there is to be submitted to the voters merely the question of the wisdom and propriety of buying the land. To resolve this question a special election becomes an unnecessary expense, and it is therefore provided that it shall be determined at the municipal election next following.

6. It is next urged that the bonded indebtedness thus incurred may exceed the fifteen per cent of the assessed value of all real and personal property in San Francisco, thus violating the provisions of section 9 of article XII of the charter; but, as the assessment-roll of San Francisco exceeds $420,000,-000, and as fifteen per cent of this would be $63,000,000, and as the contemplated bond issue is but $17,771,000, and as the municipality has no other bonded indebtedness, it is not apparent how appellant's contention in this regard can be upheld.

7. It is contended that the proposed bond issue is void upon the ground that there is a variance between the number and denomination of the bonds called for by ordinance No. 1114 and those contemplated by ordinance No. 956. Ordinance No. 1114 provided for the issuance, sale, and redemption of the

bonds, while ordinance No. 956 provided for notice of a special election called to authorize their issuance. By section 11 of article XII of the charter it is provided: ''The bonds so issued shall be exempt from all taxation for municipal purposes, and shall be issued in denominations of not less than ten dollars nor greater than one thousand dollars, and preference in the sale and allotment thereof shall be be given to subscribers for the smallest amount and lowest denominations.''. In section 10 of the same article it is provided that, after the expiration of ten days from the publication of the ordinance calling for a special election, ''the supervisors shall cause to be published daily for not less than two weeks in the official newspaper a notice of such special election. Such notice shall specify the purpose for which the indebtedness is to be incurred, the number and character of the bonds to be issued, the rate of interest to be paid, and the amount of tax levy to be made for the payment thereof.'' All this was done. The same number of bonds (11,963) of all denominations is called for by both ordinances. The number of the bonds to be issued for each separate purpose is the same in both ordinances, but in some instances the denominations of the bonds were changed, though in no instance did the denomination fail to conform to the requirements of section 11 of article XII, above quoted—namely, that no bonds shall be issued of a less denomination than ten dollars or greater than one thousand dollars. The variance complained of is immaterial, and in the case of *Derby* v. *City of Modesto,* 104 Cal. 522, where the same question arose, was so declared to be. The provisions of section 9 of article XII of the charter of San Francisco to the effect that the notice of election shall state the number and character of the bonds to be issued is taken without substantial change from section 3 of the Municipal Improvement Act of 1889 (Stats. 1889, p. 400). The city of Modesto issued and sold bonds under this act for the construction of sewers and a water system. A taxpayer resisted upon the ground ''that the board had no power to change the number and denomination of the sewer bonds.'' It was made to appear that the ordinance authorizing the publication of notice of the special election stated the number of bonds proposed to be issued for that purpose to be fifty, denomination five hundred dollars each. After it was voted to issue the bonds, the number was

changed by a subsequent ordinance to forty bonds of five hundred dollars each, and twenty bonds of two hundred and fifty dollars each. It thus appears that in the Modesto case the departure was much more marked, in that the action of the board of supervisors took place after the people had voted for the issuance of a specific number of bonds of a specific denomination; whereas, in this case the number and total amount of the bonds in each case remained the same, and such changes as were made in the denominations were made before election and duly submitted to and authorized by the voters. This court said (in the Modesto case) : "The amount of the bonds or of the indebtedness to be incurred for the specific purpose was not changed. Those directions which are not of the essence of the thing to be done, and by the failure to obey which the rights of those interested will not be prejudiced, are not to be regarded as mandatory. (Sutherland on Statutory Construction, sec. 447.) The change did not affect the validity of the bonds, and as no greater burden is imposed upon the taxpayers, the appellant cannot complain."

8. It is last contended that the proposition to issue bonds for the acquisition of Telegraph Hill did not receive the assent of two thirds of the voters. The election commissioners found that at the election 27,308 votes had been cast, of which 17,932 votes were cast in favor of the issuance of bonds for the acquisition of Telegraph Hill, and 8,187 votes were cast against such issue. The result is that 1,189 voters failed to register their will in the matter of the issuance of the Telegraph Hill bonds. While it is admitted that more than the necessary two thirds of the vote of those voting upon the question was cast in favor of the acquisition, it is contended that there should have been two thirds of the 27,308 votes, and that otherwise the bond issue was not carried. Universally courts have been reluctant to defeat the fair expression of the popular will in elections, unless the plain mandate of the law permitted of no alternative. So where the law of Kansas required that in case of the purchase of property in excess of a given value, the proposition should be submitted to a vote of the people at some general election, and a majority of all the votes cast at a poll open for that purpose must be in favor of the purchase, it is held by the United States circuit court sufficient if the proposition receive a majority of all the

votes cast upon that subject, although not a majority of all
the votes cast at that election. (*Armour Bros. Packing Co.*
v. *Board of County Commissioners*, 41 Fed. 321.) So, also,
where the constitution of Missouri provided that the general
assembly shall not authorize any county, city, or town to loan
its credit to any company, association, or corporation "unless
two-thirds of the qualified voters of such county, city, or
town at a regular or special election to be held therein shall
assent thereto," and where two thirds of the qualified voters
did not assent thereto, but two thirds of those voting did
assent thereto, the supreme court of the United States de-
cided that the voters who absented themselves were presumed
to assent, and that such election was duly carried upon the
favorable vote of two thirds of those voting. (*County of
Cass* v. *Johnson*, 95 U. S. 360.) And in our own state, con-
struing the constitutional provision (art. XI, sec. 18) to the
effect that no county shall incur any indebtedness or liability
in any manner, or for any purpose, exceeding in any year
the income and revenue provided for it for such year, with-
out the assent of two thirds of the qualified electors thereof
voting at an election to be held for that purpose, and where
an election to pass upon the question of incurring a bonded
indebtedness was called for and held at the same time with
a general election, and the returns showed that a two-thirds
majority of those voting at the general election did not vote in
favor of incurring the bonded indebtedness, but that two
thirds of those who voted upon the proposition did so vote,
although at the general election and at the bond election the
same ballot was used, this court held that the bond election
was a special election, and that the votes cast for and against
the issuance of the bonds were to be treated as all of the votes
cast at that election. But, upon the other hand, where the
meaning of the law is plain and permits of but one construc-
tion, naught is left for a court to do but to give legal effect
to its provisions. Thus in *City of Santa Rosa* v. *Bower*, 142
Cal. 299, this court, by the language of the law, which in
terms required that the proposition ordered submitted at a
general or special election must receive the assent of the
majority of the qualified electors voting at that election, was
reluctantly compelled to hold that the proposition there un-
der consideration had not been carried, notwithstanding the

fact that it had received the requisite majority of those voting upon the proposition. A like situation is presented by the matter under consideration. Section 4 of article XII of the charter provides that the board of supervisors shall submit the questions at a special election called for the purpose, and "at least two thirds of the electors voting *at such special election* shall be necessary to secure the acquisition of such public utility or utilities, and to warrant the issuance, of municipal bonds therefor." It scarcely admits of doubt that this section contemplates and requires a favorable two-thirds vote of all the votes cast at the election, and that, accordingly, the proposition to issue bonds for the acquisition of Telegraph Hill failed to carry. Whatever doubt, however, a reading of this section might leave in the mind, is absolutely removed when consideration is paid to the fact that section 4 of article XII, as originally adopted, declared that "at least two thirds of the electors voting *thereon* at such election shall be necessary to secure such acquisition and to warrant the issuance of municipal bonds therefor." Under the earlier charter provision it would have been quite permissible to hold that the law meant that each proposition severally was to receive a two-thirds vote of those voting upon it, but, *ex industria,* this language has been changed so as to require a two-thirds vote of those voting at the special election. Since these propositions were submitted separately, as the charter contemplates, the failure of one to carry does not affect the validity of the others which have received the requisite number of votes.

The judgment of this court, therefore, is, that the judgment of the trial court is affirmed as to all saving the ninth cause of action pleaded in plaintiff's complaint. As to that cause of action, touching the acquisition of Telegraph Hill for a public park, the demurrer of defendants to be overruled, and if the proofs of plaintiff upon trial shall correspond to the allegations of the complaint, then upon this cause of action to enter its judgment in accordance with the prayer of the complaint.

McFarland, J., Shaw, J., Angellotti, J., Van Dyke, J., and Lorigan, J., concurred.