[No. 15527.    Department One.—April 26, 1894.]

## THE PEOPLE, RESPONDENT v. THE TOWN OF BERKELEY, ETC., APPELLANTS.

MUNICIPAL INCORPORATION ACT—REORGANIZATION OF CHARTERED MUNICIPALITY.—Under the provisions of the municipal incorporation act a municipality formerly existing under a special charter, can only be reorganized under that act in the manner and after a compliance with all the conditions therein prescribed.

ID.—PETITION BY ELECTORS—JURISDICTION OF BOARD OF TRUSTEES—CONDITION PRECEDENT TO ELECTION.—Unless the petition for the reorganization of a municipal corporation under the municipal corporation act is signed by the requisite number of electors the board of trustees has no jurisdiction to submit the question of reorganization to the electors, and they have no right to vote upon it.

ID.—PETITION WITH DETACHED SIGNATURES.—Where two or more petitions identical in language are circulated and signed, and to make the required number of names the signatures on one or more petitions are cut off and pasted on to a single petition which is presented, and which

petition is signed by a less number of electors th m is required by the statute, the board have no authority to order an election.

ID.—SUBMISSION OF QUESTION OF REORGANIZATION—"GENERAL ELECTION" —MUNICIPAL ELECTION.—The provision for the submission of the question of the reorganization of a municipality at the "general election," is satisfied by submitting the question at the election provided for by law for the election of municipal officers.

ID.—"MAJORITY OF ELECTORS VOTING"—CONSTITUTIONAL CONSTRUCTION. The provision of the constitution requiring that a "majority of the electors voting at a general election" must determine the question of reorganization, imports that a majority of all the electors voting at the election is necessary to carry the proposition to reorganize, notwithstanding a majority of all the electors who vote upon the proposition to reorganize were in favor of it.

APPEAL from a judgment of the Superior Court of Alameda County.

The facts are stated in the opinion.

*Edward C. Robinson, W. Lair Hill,* and *Edward A. Holman,* for Appellant.

The petition presented by the electors was sufficient to confer jurisdiction. The detaching of the signatures from some of the headings and the attaching of them to the remaining petition did not invalidate the petition. (*Campbell* v. *Park,* 32 Ohio St. 544; *Commissioners* v. *Young,* 36 Ohio St. 288; *Corry* v. *Gaynor,* 22 Ohio St. 584; *Douglass* v. *Baker County,* 23 Fla. 419; *McKinney* v. *Commissioners,* 26 Fla. 267.) The election at which the city of Berkeley was reorganized was a general election, that is an election fixed by law to be held at a stated time annually. (Berkeley Town Charter, secs. 4, 5; *Town of Ottowa* v. *County of La Salle,* 11 Ill. 654; *Ruggles* v. *Woodland,* 88 Cal. 430; *Foote* v. *Cincinnati,* 11 Ohio, 408; 38 Am. Dec. 737; *People* v. *Brenham,* 3 Cal. 477, 478.) A majority of the electors voting upon the reorganization of the town was sufficient, as the constitution does not require a majority of all the electors voting at the election upon other propositions receiving a higher number of votes. (Const., art. XI, sec. 6; 2 Abbott's Law Dictionary, p. 70, tit. "Majority"; *Louisville etc. R. R. Co.* v. *County Court,* 1 Sneed, 637; 62 Am.

Dec. 424; *People* v. *Warfield*, 20 Ill. 159–64; *Walker* v. *Oswald*, 68 Md. 146; *Oldknow* v. *Wainwright*, 2 Burr. 1017; *Gillespie* v. *Palmer*, 20 Wis. 544; *State* v. *Barnes*, 55 N. W. Rep. 883 (N. D.); *State* v. *Grace*, 20 Or. 154; *State* v. *Echols*, 41 Kan. 1; *Commissioners* v. *Winkley*, 29 Kan. 36; *Metcalfe* v. *Seattle*, 1 Wash. 297; *Yesler* v. *Seattle*, 1 Wash. 308; *People* v. *Ryder*, 16 Barb. 370; *Everet* v. *Smith*, 22 Minn. 53; *Rex* v. *Miller*, 6 Term. Rep. 268; *Buell* v. *Buckingham*, 16 Iowa, 284; 85 Am. Dec. 516; *Smith* v. *Proctor*, 130 N. Y. 319; McCrary on Elections, 3d ed., sec. 173; Paine on Elections, sec. 575, and cases cited; Boone on Corporations, sec. 67; Dillon on Municipal Corporations, 4th ed., sec. 44.)   When an election is held at which a matter is to be determined by a majority of voters entitled to cast ballots thereat, those absenting themselves are considered as acquiescing in the result declared by those actually voting. (*People* v. *Clute*, 50 N. Y. 451–61; 10 Am. Rep. 508; *St. Joseph Township* v. *Rogers*, 16 Wall. 644; *State* v. *Echols*, 41 Kan. 1; *County of Cass* v. *Johnston*, 95 U. S. 360; *Commissioners* v. *Winkley*, 29 Kan. 36; *In re County Seat*, 15 Kan. 500.)   The same is true of those who were present but abstained from voting upon the proposition.  (*Oldknow* v. *Wainwright*, 2 Burr. 1017; *People* v. *Clute*, 50 N. Y. 451–61; 10 Am. Rep. 508; *Walker* v. *Oswald*, 68 Md. 146.)

*Attorney General W. H. H. Hart, C. L. Colvin*, and *T. F. Graber*, for Respondent.

A valid petition was necessary in order to give the board jurisdiction to order the election. (*People* v. *Riverside*, 66 Cal. 288; *Page* v. *Board of Supervisors*, 85 Cal. 50; *La Londe* v. *Board of Supervisors*, 80 Wis. 380.) The petition in this case was not sufficient, as the same petition was not presented to all of the signers.  (*Fox* v. *Board of Supervisors*, 49 Cal. 563.)   The proposition of reorganization was not submitted at a "general election" as required. (Black's Law Dictionary, p. 535; Pol. Code, secs. 1041, 1185, 1186, 1196, 1197, 1199,

1201, 1203, 1204; Const., art. XI, sec. 6. See, also, *Desmond* v. *Dunn*, 55 Cal. 242; *In re Stuart*, 53 Cal. 745; *Barton* v. *Kalloch*, 56 Cal. 95; *Peopls* v. *Ransom*, 58 Cal. 558; *Wood* v. *Election Com.*, 58 Cal. 561; *Staude* v. *Election Com.*, 61 Cal. 313.) An election not held at the time prescribed by law is void. (*People* v. *Church*, 6 Cal. 76; *People* v. *Mathewson*, 47 Cal. 442; *People* v. *Harvey*, 58 Cal. 337; *Page* v. *Board of Supervisors*, 85 Cal. 50; *State* v. *Ewing*, 17 Mo. 515; *Yant* v. *Brooks*, 19 Iowa, 87.) Conceding that the proposition was submitted at a general election, still it did not receive the majority of votes required by the constitution. (Const., art. XI, sec. 6; *State* v. *County Commissioners*, 6 Neb. 474; *State* v. *Babcock*, 17 Neb. 188; *State* v. *Anderson*, 26 Neb. 517; *Inavale* v. *Bailey*, 35 Neb. 453; *People* v. *Brown*, 11 Ill. 478; *People* v. *Wiant*, 48 Ill. 263; *Chestnutwood* v. *Hood*, 68 Ill. 132; *Taylor* v. *Taylor*, 10 Minn. 107; *Bayard* v. *Klinge*, 16 Minn. 249; *Everett* v. *Smith*, 22 Minn. 58; *State* v. *Winkelmeier*, 35 Mo. 103; *State* v. *Sutterfield*, 54 Mo. 392; *State* v. *Brassfield*, 67 Mo. 331; *State* v. *Mayor*, 73 Mo. 435; *County Seat of Linn Co.*, 15 Kan. 500; *State* v. *Swift*, 69 Ind. 505; *Hawkins* v. *Carroll Co.*, 50 Miss. 735; *Cocke* v. *Gooch*, 52 Tenn. 294; *Bouldin* v. *Lockhart*, 62 Tenn. 262; *Braden* v. *Stumph*, 84 Tenn. 581; *State* v. *Labaw*, 32 N. J. L. 269; *Fort Worth* v. *Davis*, 57 Tex. 225; *People* v. *Trustees*, 70 N. Y. 28; *Duke* v. *Brown*, 96 N. C. 127; *Southerland* v. *Goldsboro*, 96 N. C. 49; *Armour* v. *Board*, 41 Fed. Rep. 321; *Enyart* v. *Trustees*, 25 Ohio St. 618; *State* v. *Foraker*, 46 Ohio St. 677. See, also, *Desmond* v. *Dunn*, 55 Cal. 242; *Thomason* v. *Ashworth*, 73 Cal. 73; *Staude* v. *Election Com.*, 61 Cal. 313.)

BELCHER, C.—This is an appeal from a judgment on the judgment-roll, and the only contention of appellant is that the judgment is not supported by the findings.

The action was instituted by the attorney general upon the relation of one Wells, challenging the legality of the proceedings taken for the reorganization of

appellant, as a municipal corporation of the fifth class, under the general laws of the state.

The court found the facts to be in substance as follows: The town of Berkeley was organized as a municipal corporation in 1878, under an act of the legislature, approved April 1, 1878, and entitled "An act to incorporate the town of Berkeley, in Alameda county"; and thereafter it continued to exercise its corporate franchise, under and by virtue of said act, until June 28, 1893. On April 3, 1893, at a regular meeting of the board of trustees of the town, there was presented to said board, read, and placed on file, a petition asking that the question of the reorganization of the town, as a city of the fifth class, under the general laws relating to municipal corporations, should be submitted to the electors thereof at the next general election to be held therein. This petition was signed by only forty-seven qualified electors of the town, but attached to it were seven other sheets of paper signed by qualified electors of the town, numbering in the aggregate one hundred and sixty-five. The signatures were obtained as follows: Prior to April 3, 1893, eight separate petitions, identical in form and language, were circulated by different persons, and signatures were obtained to each of them. After these petitions had all been signed, the signatures on seven of them were cut off and detached by a person having no authority to do so, and were then attached to the other one so that they appeared to constitute a part of it. The petition to which the seven detached sheets were thus attached was then by the same person presented and filed as aforesaid, as and for a genuine petition containing two hundred and twelve signatures. The whole number of votes cast at the last prior municipal election held in the town was one thousand and fifty-five. On the day the said petition was presented, April 3d, the board of trustees, acting upon the same, passed an ordinance submitting to the electors of the town at the next general election to be held therein, to wit, on the eighth

day of May, 1893, the question of the reorganization of the town as a city of the fifth class. The election on May 8th was the annual election provided for by the charter of 1878 for the election of municipal officers, and at that election twelve hundred and eighty-seven electors voted for town officers, and five hundred and thirty-three in favor of reorganization, and five hundred and seventeen against reorganization. In due time the board of trustees canvassed the vote and declared the proposition to reorganize carried, and thereupon caused their clerk to make and transmit to the secretary of state a certified abstract of such vote. Thereafter the said board called a special election for the election of the officers required by law to be elected in cities of the fifth class, and the election was held on June 26th. On June 28th the board canvassed the vote and declared the result, and from and since the said last-named date the defendant has been, and still is, holding and exercising the franchise of a municipal corporation of the fifth class, under and by virtue of the proceedings hereinbefore set forth, and not otherwise.

And as conclusions of law the court found:

"That said defendant has never been legally organized as a city of the fifth class, and that all the steps, proceedings, and elections held in that behalf, as in the findings of fact herein are stated, were and are void."

"That defendant has usurped, intruded into, and unlawfully held and exercised the franchise of a municipal corporation of the fifth class, and is now usurping, intruding into, and unlawfully holding and exercising such franchise."

Three questions are presented, and counsel on both sides earnestly ask that each of them be considered and decided. They are:

1. Was the petition, presented to the board of trustees, sufficient to give it jurisdiction to submit the proposition of reorganization to a vote of the electors?

2. Was the election at which the proposition was sub-

mitted a general election within the meaning of the statute?

3. To carry the proposition, was a majority of all the electors voting upon it sufficient, or was a majority of all those voting at the election necessary?

1. The constitution provides: " Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification, in proportion to population, of cities and towns, which laws may be altered, amended, or repealed. Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith." (Const., art. XI, sec. 6.)

In obedience to this mandate of the constitution, an act was passed by the legislature and approved March 13, 1883, entitled: "An act to provide for the organization, incorporation, and government of municipal corporations." (Stats. 1883, p. 93.)

Section 4 of this act provides: " The common council, board of trustees, or other legislative body of any city and county, city, or town, organized or incorporated prior to the first day of January, eighteen hundred and eighty, at twelve o'clock meridian, shall, upon receiving a petition therefor, signed by not less than one-fifth of the qualified electors of such city and county, city, or town, as shown by the vote cast at the last municipal election held therein, submit to the electors of such city and county, city, or town, at the next general election to be held therein, the question whether such city and county, city, or town, shall become organized under the general laws of the state relating to municipal corporations of the class to which such city and county, city, or town may belong."

It is clear that, under these provisions, a municipality could only be reorganized in the manner and after a compliance with all the conditions prescribed. It fol-

lows, therefore, in this case that a petition was necessary, and that unless one signed by the requisite number of electors was presented to the board, it had no jurisdiction to submit the question of reorganization to the electors, and they had no right to vote upon it.

As before stated, the number of votes cast at the last municipal election held in the town was ten hundred and fifty-five. It was necessary, therefore, that the petition be signed by at least two hundred and eleven electors. The petition presented was signed by only forty-seven, and unless the signatures on the attached sheets could be counted, it was clearly insufficient. Probably if the several petitions as signed had been presented they might and should be regarded and treated as " a petition" within the meaning of the statute; and in a similar case it was so held by the supreme court of Florida. (*McKinney* v. *County Commrs.*, 26 Fla. 267.)

In *Fox* v. *Board of Supervisors*, 49 Cal. 563, the same question now in hand arose, and it was held that "if two petitions, identical in language, are circulated and signed, and, to make the required number of names, the signatures on one petition are cut off and pasted on to the other, which is presented, the board have no authority to order the election." The court, by Wallace, C. J., said: " The petition presented to the board must be that petition which was signed by the petitioners. Both signature and presentation are necessary. In this view the identity of the instrument presented as being that which came from the hands of the petitioners is indispensable. To say that, though the signers did not affix the names to the petition presented, they did affix them to another and similar petition not presented to the board is no answer; nor does it satisfy either the terms of the statute or its obvious policy, which was to shut the door against frauds which would inevitably occur if the practice of detaching signatures from one petition and attaching them to another were permitted."

And Crockett, J., in a concurring opinion, also said:

"If numerous petitions with similar headings be circulated for signatures, and if the headings from all the petitions except one be cut off, and all the names, without the knowledge or consent of the signers, be pasted to the one heading, and in that form presented to the board, it is clear that the paper thus presented was not ' signed' by those whose signatures were affixed to it by pasting. Whether they signed another paper with a similar heading will rest entirely in parol, and can only be ascertained by oral proofs. If such proof will suffice as to a portion of the petitioners, it will be equally effective as to all. We might then have the case of a petition never in fact signed by any one; and the omission could be supplied only by oral proof that the petitioners had signed other similar petitions. If a practice of this kind was tolerated it would open the door to numerous frauds, and would result in substituting oral proof for that which the statute requires to be in writing."

There are some conflicting authorities in other states, and counsel for appellant insist that the decision in the Fox case should be overruled. It has, however, so far as we know, remained unquestioned in this state for nearly twenty years, and seems to be based on sound and convincing reasoning. It should, therefore, in our opinion, be upheld and followed.

2. The election held on May 8, 1893, was the annual election provided for by law for the election of municipal officers, and, in our opinion, it was a general election at which the question of reorganization might properly be submitted. It is true that the words "general election" are ordinarily used to designate one at which state and county officers are elected, but we know of no provisions in the constitution or statutes limiting them to such an election. Two classes of elections only are spoken of, general and special; and a regular annual municipal election cannot be included in the latter class, but must be treated as a general election.

In *Ruggles* v. *Board of Trustees of the City of Woodland,* 88 Cal. 430, application was made for a writ of mandate

to compel the trustees to call and provide for the hold-
ing of an election of city officers.   The court said:
"Prior to May 6, 1890, the city of Woodland, in Yolo
county, was a municipal corporation under a special
charter.   On that date a proposition to reorganize as a
city of the fifth class, under the general incorporation
act approved March 13, 1883, was duly submitted to the
electors of said city, and approved by a majority vote."

And it was held that a peremptory writ should issue.
No general state or county election took place on May
6th, but the court must have considered the election
held on that day a general election, or it could not have
said that the proposition to reorganize " was *duly* sub-
mitted to the electors."

3. At the election held on May 8th a majority of all
the electors who voted upon the proposition to reorgan-
ize were in favor of it, but not a majority of all who
voted at the election.

The provision of the constitution in regard to elec-
tions like that under consideration has been quoted, and
it will be observed that the words used are; "whenever
a majority of the electors voting at a general election
shall so determine."   These words clearly do not indi-
cate that only a majority of the electors voting upon the
proposition is necessary, but would seem to imply that
a majority of all those voting at the election is required.
And such was evidently the interpretation placed upon
this provision by the legislature when it passed the Gen-
eral Municipal Incorporation Act of 1883.   Section 4 of
that act, after providing for the presentation of a peti-
tion, the submission of the question at the next general
election, etc., proceeds as follows: "The votes so cast
shall be canvassed at the time and in the manner in
which the other votes cast at such election are can-
vassed.   If, upon such canvass, a majority of all the
electors voting at such election shall be found to have
voted for such reorganization the said council, board,
or other legislative body shall, by an order entered upon
their minutes, cause their clerk, or other officer per-

forming the duties of clerk, to make and transmit to the secretary of state a certified abstract of such vote, which abstract shall show the whole number of electors voting at such election, the number of votes cast for reorganization, and the number of votes cast against reorganization."

This language plainly implies, we think, that a majority of all the electors voting at the election is necessary to carry the proposition to reorganize.

Counsel on both sides have argued the questions at great length, and have cited numerous authorities, but we do not deem it necessary to follow their arguments further, or to review the cases referred to.

It follows that the court below drew correct conclusions from the facts, and that the judgment should be affirmed.

SEARLS, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

HARRISON, J., GAROUTTE, J., PATERSON, J