[No. 15789.    In Bank.—March 20, 1895.]

THE PEOPLE EX REL. E. C. BEASLEY, APPELLANT, v. TOWN OF SAUSALITO ET AL., RESPONDENTS.

INCORPORATION OF TOWN—ELECTION—CANVASS OF VOTES.—Under the statute of 1883, page 93, a board of supervisors, in canvassing the votes given at an election called to determine whether or not a town should be incorporated, need not actually count the ballots; it is sufficient if it canvass the returns.

ID.—ORDER OF BOARD OF SUPERVISORS—COUNT OF BALLOTS.—After the canvass the board entered an order on its minutes, which showed that votes were cast as follows: "For incorporation received, one hundred and twenty-eight votes; against incorporation received, one hundred and five votes"; and then, after a showing of certain votes for officers, there was this statement in the order: "Total votes polled, two hundred and sixty-six." *Held*, That in an action attacking the validity of the incorporation, any uncertainty arising from the statement as to the number of votes "polled" might be explained by showing the real facts upon a judicial count of the ballots.

ID.—ORDER DECLARING INCORPORATION.—The requirement of the statute that a certified copy of the order declaring the territory duly incor-

porated should be filed in the office of the secretary of state does not necessitate the certifying and filing of all the entries which were made at the time of the canvass on the minutes of the board.

ID.—BLANK BALLOTS.—In an election to determine as to the incorporation of a town, official ballots deposited in the ballot-box, without any marks thereon to indicate the elector's wish in any particular, are not to be deemed as "votes cast" in any sense.

ID.—PENCIL MARKS.—In such election a ballot marked with a lead pencil and not with the official stamp, is invalid, and should not be counted; and so also as to a ballot which had no mark of any kind, except that at the bottom, entirely below all the printed matter, it had the words "against incorporation" written with a pencil.

ID.—STAMPING BALLOTS.—A ballot, stamped at the proper place with the official stamp, but having the cross-marks blurred, is valid, and should be counted, as should also a ballot on which the cross-marks extended slightly below the line.

APPEAL from a judgment of the Superior Court of Marin County and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*George W. Towle, Jr.,* and *Attorney General W. H. H. Hart,* for Appellant.

*Hepburn Wilkins,* and *Robert Harrison,* for Respondents.

McFARLAND, J.—This is a proceeding brought in the name of the people to have it decreed that the town of Sausalito is not a duly organized municipal corporation, etc. Judgment went for the defendants, and plaintiff appeals.

It is contended by appellant that the board of supervisors of Marin county did not "canvass the votes" given at the election called to determine whether or not the town should be incorporated, because said board did not have before it the ballots deposited at said election, and did not count the same, but merely canvassed the "returns." (Stats. 1883, p. 93.) This position is not tenable. To canvass the votes does not necessarily mean to count the ballots; and to give it the latter meaning would be to defeat the entire purpose of the statute, for it provides that the election shall be con-

ducted " in accordance with the general election laws of the state," and as the ballots were returned to the county clerk the board could not get possession of them, and, therefore, could not have counted them. To "canvass the returns" and to "canvass the votes" are frequently used in statutes and judicial opinions synonymously; and in the case at bar the words used should be held to have been intended in the sense that would give effect to the statute.

Appellant introduced certain "records" (so called) of the board of supervisors, from which it appears that, after the canvass, the board entered an order on its minutes as required by section 3 of the act under which the election was held (Stats. 1883, sec. 3, p. 94), which showed that votes were cast as follows: "For incorporation received one hundred and twenty-eight votes; against incorporation received one hundred and five votes"; and then, after a showing of certain votes for officers, there was this statement in the order: "Total votes polled, two hundred and sixty-six." Appellant contends that these minutes, or " records," bind respondents to the proposition that there was not a majority of of votes *cast* for incorporation, because of said statement " total votes *polled,* two hundred and sixty-six"—one hundred and twenty-eight not being a majority of two hundred and sixty-six; but we do not think so. The board was not required to enter on their records the number of votes polled. Moreover, it does not appear what was meant by " polled"; the board may have meant merely that there were certain blank official ballots deposited in the ballot-box. Under any view, as the board found and ordered that a majority of the votes *cast* were for incorporation, the respondents, when the validity of the incorporation was attacked by this action, had the right to explain any uncertainty that might arise from the statement about the two hundred and sixty-six votes polled, by showing the real facts upon a judicial count of the ballots in court.

The board sufficiently complied with the provision of

the statute that a certified copy of the order declaring the territory duly incorporated should be filed in the office of the secretary of state. The provision is that "the board shall, by an order and entered upon their minutes, declare such territory duly incorporated as a municipal corporation"—giving its class, name, etc; and that a copy of "such order" shall be filed. This was done; and there was no necessity of certifying and filing all the entries which were made at the time on the minutes of the board.

The foregoing points made by appellant are largely technical. The real point on the merits is whether or not there was, in fact, a majority of votes cast "for incorporation."

The votes were counted by the court, and the statement on motion for a new trial declares that: "Upon such count it appeared that there were one hundred and thirty votes cast for incorporation; one hundred and twelve votes against incorporation; seven official ballots without mark placed thereon by the elector to indicate the voter's wish in any particular, either on the subject of incorporation or officers; seventeen official ballots without mark placed thereon by the elector to indicate his wish on the subject of incorporation, but having marks against name of officers named on ballots." According to this statement there was certainly a majority for incorporation. It is clear that the seven ballots without any marks to indicate the elector's wish "in any particular" were not votes in any sense. They were mere blanks, and were not to be counted or considered for any purpose. The sum of one hundred and twelve votes against incorporation and the seventeen for officers only is one hundred and twenty-nine, less than the number of votes for incorporation; and, therefore, a majority of the votes cast were for incorporation. But there is a dispute between the parties as to how nine of the ballots should have been counted. Appellant contends that ballot marked "C" should have been counted against incorporation; but the only marks on it were

made with a lead pencil, and not with the official stamp, and it was properly excluded. (*Lay* v. *Parsons*, 104 Cal. 661.)

Appellant also contends that ballot " F " should have been counted against incorporation; but it had no mark of any kind except that at the bottom, entirely below all the printed matter, it had the words " against incorporation" written with a pencil, and was properly excluded. There is no provision for that method of voting except when one desires to vote for a candidate for office whose name is not on the printed list on the ballot. Under our present election laws it is not enough to find out generally the intention of the voter (as it was under a former and simpler system); that intention must be expressed in the manner prescribed by the law, which has also other purposes, as the preservation of absolute secrecy, etc. Appellant also contends that ballot " E " should not have been counted for incorporation; but this ballot was stamped at the proper place with the official stamp, and the only objection to it is that the cross-strokes were blurred; and that is not a sufficient circumstance to make the vote invalid. Appellant also contends that ballot " I " should not have been counted for incorporation. The only objection to this ballot is that a part of the cross was on the line below; but the court, upon inspection of the ballot, held that the greater part of the cross was above the line, and we cannot disturb the ruling. The foregoing are the only points which appellant makes in his brief on this branch of the case.

Of the other five disputed ballots, " A," " D," and "G " were counted against incorporation over the objections of respondents, and " B," which showed no attempt at voting on the subject of incorporation, was counted as a vote on officers, against the objections of respondents who claimed that it should not have been counted at all, because the marks for officers were not in the right place. " H " was counted for incorporation. This ballot had the cross marked in the center of the

ballot, and not in the square provided for it under the election law. But ballots "A" and "D" have the same defect as ballot "H," and were counted against incorporation; and "B," which was counted for officers, had also the same defect; and ballot "G," counted against incorporation, had the cross entirely outside of the square, and beyond the dotted line. It is quite clear, therefore, that, if "H" counted for incorporation, should have been excluded, then "A," "D," "B," and "G," should also have been excluded; and thus the majority for incorporation would have been greater.

The foregoing views are conclusive in favor of respondents, and it is unnecessary to examine the position taken by the learned judge of the court below, in a very able opinion, that under the language of the statute under which the election was held only those votes are to be considered which were cast on the proposition of incorporation. He distinguishes the language of this statute " from language in constitutions and statutes which require that, before a measure shall be deemed adopted, it must receive the 'assent of the majority of the electors of a territory,' 'the votes of a majority of the electors of a county,' 'the assent of a majority of the electors voting at a general election,'" etc. We are much inclined to agree with the learned judge on this point, but we are not called upon to definitely determine it in this case.

The judgment and order denying the motion for a new trial are affirmed.

Van Fleet, J., Harrison, J., Garoutte, J., and Henshaw, J., concurred.