[S. F. No. 3654. In Bank.—February 19, 1904.]

## CITY OF SANTA ROSA, Appellant, v. M. J. BOWER, Respondent.

MUNICIPAL CHARTER—RATIFICATION AT GENERAL MUNICIPAL ELECTION— MAJORITY OF VOTES CAST.—Where the ratification of a municipal charter framed by freeholders of a city under section 8 of article XI of the constitution was submitted to the voters at the general municipal election, the charter is not adopted merely because it received a majority of the votes cast thereupon if it did not receive a majority of all the votes cast at the municipal election.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

Marvin T. Vaughan, for Appellant.

T. J. Geary, for Respondent.

A. B. Ware, *Amicus Curiæ,* also for Respondent.

SHAW, J.—Section 8 of article XI of the constitution provides that when a freeholder's charter has been approved by the legislature, a copy thereof "certified by the mayor, or chief executive officer, and authenticated by the seal of such city, setting forth the submission of such charter to the electors, and its ratification by them, shall, after the approval of such charter by the legislature, be made, in duplicate, and deposited, one in the office of the secretary of state, and the other, after being recorded in said recorder's office, shall be deposited in the archives of the city, and thereafter all courts shall take judicial notice of such charter." The present proceeding is in *mandamus* to compel the defendant as mayor of the city of Santa Rosa to perform the act thus required of him by the constitution with respect to a freeholder's charter alleged to have been adopted by the people of Santa Rosa and approved by the legislature. A demurrer was sustained to the complaint and judgment given in favor of the defendant, from which the plaintiff appeals.

It is contended that the charter in question was not legally adopted at the election. The same section of the constitution provides that after such charter is prepared by the board of freeholders and duly published "it shall be submitted to the qualified electors of said city at a general or special election, and if a majority of such qualified electors *voting thereat* shall ratify the same, it shall thereafter be submitted to the legislature for its approval or rejection as a whole, without power of alteration or amendment." The complaint shows that the charter, after having been prepared by the freeholders and duly published, was submitted to the qualified electors of the city at the general municipal election in April, 1902; that at said election 1,474 votes were cast, but upon the question of adoption of the charter there were only 1,143 votes, of which 611 were in favor of the charter and 532 against it. The same facts also appear in the legislative resolution approving the

charter. (Stats. 1903, p. 703.) The defendant justifies his refusal to certify the charter upon the ground that such a charter cannot be legally ratified unless it receives a majority of the votes of all electors voting at such election, and that a majority of those voting upon the proposition is not sufficient, unless it also constitutes a majority of all the votes cast at said election for any and all purposes. If this proposition is correct, the judgment must be affirmed. The case of *People* v. *Town of Berkeley*, 102 Cal. 298, involved a statutory provision substantially the same as the constitutional provision in question in the case at bar. That case construed the provision of section 6 of the same article of the constitution, providing that cities and towns heretofore organized or incorporated may become organized under the general laws "when a majority of the electors voting at a general election shall so determine," and it was held to require the favorable vote of a majority of all the electors who voted at the election. There is no substantial distinction between the phrase construed in that case and the one under consideration here. A majority of the electors "voting at a general election" is substantially the same thing as a majority of the qualified electors "voting thereat." The word "thereat" in section 8 by grammatical construction refers to the previous phrase "general or special election," and is exactly the same in meaning as if the sentence had read "if a majority of such qualified electors voting *at such election* shall ratify the same." So read, the language is identical with that construed in *People* v. *Town of Berkeley*, 102 Cal. 298. The question has been decided by different courts in different ways, and the authorities cannot be reconciled. The case of the *City of South Bend* v. *Lewis*, 138 Ind. 512, presents an elaborate review of all the authorities on the subject, and this conclusion is reached with respect to the particular class to which this case belongs: "Where a question is required to be submitted at a certain regular election, and is made to depend upon a majority of the votes cast 'at such election,' a majority of all the votes cast at the election is meant, and not merely a majority of the votes cast on that particular question." (p. 993.) This construction of the language of section 8 is strengthened by the fact that at the general election in November, 1902, an amendment to the section was adopted by the people substituting the word

."thereon" instead of "thereat," thus indicating that the people and the legislature had assumed that the above construction is the proper one and that they wished to change the same. It is also strengthened by considering other similar provisions of the constitution. An amendment to the constitution is adopted if the people approve and ratify the same "by a majority of the qualified electors voting *thereon.*" The distinction between the words "thereon" and "thereat" is very clear. The one means the votes cast upon the proposition in question; the other means the votes cast at the election at which the proposition is submitted.

The case is clearly distinguishable from that of *Howland* v. *Supervisors,* 109 Cal. 152, where the constitutional provision relative to the incurring by a county of an indebtedness in excess of the income and revenue of the year, provided that such indebtedness could not be incurred "without the consent of two thirds of the qualified electors thereof voting at an election *to be held for that purpose.*" The mere fact that such question was in that case submitted at a general election did not make the election as to such question any less a special election, "held for that purpose," than if the proposition had been submitted by itself at another time, and the assent of two thirds of the qualified electors voting *on the proposition of the indebtedness* was held sufficient.

For the same reason the case is distinguishable from that of *People* v. *Sausalito,* 106 Cal. 500, where by the law the question of incorporation was required to be submitted at an election "to be held *for the purpose of determining whether the same shall become incorporated,*" and a majority of the votes cast at such election were held to be essential to incorporation. This court in that case intimated, without definitely deciding, that only those votes which were cast on the proposition of incorporation could be considered in determining whether or not the proposition for incorporation had prevailed.

In the case at bar the language of the constitutional provision does not call for an election "for the purpose" of determining the question, but expressly allows the question to be submitted "at a general or special election," and in terms requires that, whether submitted at a general or special election, it must receive the assent of a majority of the qualified

electors voting at the election. For these reasons we are of the opinion that the action of the court below in sustaining the demurrer was correct.

The judgment is affirmed.

McFarland, J., Angellotti, J., Van Dyke, J., and Lorigan, J., concurred.