[Civ. No. 1046.   Second Appellate District.—October 20, 1911.]

# CITY OF LONG BEACH, a Municipal Corporation, Petitioner, v. C. O. BOYNTON, City Clerk of the City of Long Beach, Respondent.

MUNICIPAL CORPORATIONS—CITY CHARTER — CONSTRUCTION—DIFFERING NATURE OF IMPROVEMENTS—CONFLICT TO BE AVOIDED.—The charter of the city of Long Beach is to be fairly construed, so as to avoid a conflict between two sections thereof, where both sections can be given an operative effect through a different construction. The provisions of subdivision 8 of section 3 of the charter, relative to supplying the city and its inhabitants with water, gas, electricity, conduits or railroads, providing that two-thirds of the votes on the question of bonds will be sufficient, is limited to bonds for such improvements specified, and cannot be construed as applying to the improvements of a different nature specified in subdivision 11 and section 21 of article XI thereof, as to which a different rule is applied.

ID.—BONDS FOR NEW PIER—WANT OF AUTHORITY—INVALID ELECTION. The charter of the city of Long Beach, construed with reference to the power of that city to issue bonds to acquire a new pier, the cost of which will exceed the income and revenue provided for in any one year, is not to be governed by subdivision 8 of section 3 of its charter, but solely by section 21 of article XI thereof, which requires the proceedings therefor to be had in pursuance of section 18 of article XI of the constitution and the general laws of the state, which require the votes of two-thirds of all the voters voting at the election; and an election for a bond issue for such pier, in the sum of $50,000, merely voted for by two-thirds of those voting on the bonds, but by less than two-thirds of all the votes cast at the election, is unauthorized and invalid.

ID.—ELECTION NOT VALIDATED BY CURATIVE ACT.—The curative act of 1911, which provided that it shall not operate to legalize any bonds of any municipality that have not been, at the time of the passage of that act, authorized by a vote of not less than two-thirds of the qualified electors of such municipality voting at any such election, did not operate by its terms to validate an election at which it is conceded that less than two-thirds of the voters voting at such election voted in favor of such $50,000 bond issue.

ID.—VOID BONDS FOR COMPLETION AND REPAIR OF EXISTING WHARF—MUNICIPAL AFFAIR—CHARTER CONTROLLING—CURATIVE ACT INAPPLICABLE.—The issuance of bonds in the sum of $75,000 for the completion and repair of an existing wharf is a municipal affair to be governed by the provisions of the municipal charter, which

is controlling; and if the bond provision is not authorized by the charter, it is not within the province of the legislature, by any curative act, to legalize such invalid bond issue. A curative act, to be effectual, must refer to proceedings which the legislature might, in the first instance, regulate and control.

ID.—BONDS FOR MAINTENANCE OR REPAIRS OF EXISTING WHARF NOT AUTHORIZED—CURRENT REVENUE.—Bonds for the maintenance or repairs of an existing wharf are not authorized by the charter of the city of Long Beach. Any reasonable doubt as to the existence of the power to issue such bonds is to be resolved against it. While bonds for the original construction of a wharf or pier may be authorized, yet the cost of its maintenance or repair must be paid from the ordinary current revenue of the city arising from the maximum rate of tax levy authorized by its charter.

ID.—WRIT OF MANDATE PROPERLY REFUSED TO COMPEL BOND ISSUE.— It is held that no writ of mandate should issue to compel either the bond issue of $50,000 for the construction of a new pier, or the bond issue of $75,000 for the maintenance and repairs of an existing wharf for the city of Long Beach.

PETITION for writ of mandate to the city clerk of the city of Long Beach.

The facts are stated in the opinion of the court.

Stephen G. Long, and Percy Hight, for Petitioner.

H. J. Stevens, and O'Melveny, Stevens & Milliken, for Respondent.

ALLEN, P. J.—It appears from the petition that Long Beach is, and was at all times mentioned in the petition, a charter city; that in February of 1910 the council of such city duly adopted resolutions determining that the public interest and necessity demanded the acquisition, construction and completion by the city of the following named public improvements: First, the acquisition, construction and completion of certain repairs upon a double-deck, cylinder pier belonging to the city; and second, the acquisition, construction and completion of a new pier one thousand feet in length at a point designated in said city; that at a subsequent meeting of the council an ordinance was duly adopted giving notice of a special election to be held in said city, submitting to

the qualified voters the proposition of incurring an indebtedness in the amount of $75,000 for the first and $50,000 for the second improvement named, and further that both of the issues did not exceed fifteen per cent of the assessed value of the real and personal property in said city, and that the cost of the acquisition, construction and completion of said public improvements is and will be too great to be paid out of the ordinary annual income and revenue of said municipality; that by said ordinance it was further provided that bonds be issued for each of the said improvements, one-fortieth of the principal and the interest at the specified rate to be paid annually, and providing further for a tax levy to meet such payments, and further providing for all of the matters provided by the charter or by the general law for the holding of an election pursuant to such ordinance. It is further made to appear that, with reference to the first-mentioned improvement, more than two-thirds of the electors voting at said election voted yes; that as to the second proposition less than two-thirds of those voting at such election, but more than two-thirds of those voting upon the proposition, voted yes; that the first levy necessary for the annual payment of the principal and interest upon the bonds has been made and collected without protest by the taxpayers; that subsequent to the passage of the ordinance, another ordinance was passed providing for the issuance of city bonds to cover the amount so voted at such election, that the city clerk refuses to attest said bonds and declines so to do, and this writ is sought to compel the attestation thereof.

Section 3 of the charter of the city of Long Beach, defining the general powers of the city, contains twenty-eight subdivisions. In the eighth subdivision thereof, with reference to supplying the city and its inhabitants with water and gas, electricity, conduits or railroads, or with either, it is provided that bonds may be issued for the acquisition of such public improvements, and that two-thirds of the votes cast on the question of such issue of bonds, if in the affirmative, shall be sufficient. Subsequently, in the eleventh subdivision the power to construct and keep in repair wharves and piers is provided for, no reference being there made as to issue of bonds, or the number of votes requisite in the event of the

issuance of bonds therefor. In section 21, article XI, of the charter it is provided: "Whenever the council shall determine that the public necessity requires the construction, or acquisition, or completion of any permanent municipal building, . . . or other public improvement or utility, the cost of which, in addition to the other expenditures of the city, will exceed the income and revenue provided for in any one year, they may, by ordinance, submit a proposition to incur a debt for that purpose, and proceed therein as provided in section 18, article XI, of the constitution of this state, and general law or laws thereof." The general law of the state (Stats. 1901, p. 27), section 3, provides: " . . . It shall require the votes of two-thirds of all the voters voting at such special election to authorize the issuance of the bonds herein provided." This section has received a construction by the supreme court of this state in the case of *Law* v. *San Francisco,* 144 Cal. 384, [77 Pac. 1014], wherein it is determined that where two propositions were submitted that each, in order to carry, must receive two-thirds of all the votes cast at the election, and that the failure of one to carry does not affect the validity of the other which has received the requisite number of votes. We are of opinion that a fair construction of the charter of the city of Long Beach requires us to say that subdivision 8 of section 3 of the charter, wherein it specifies the number of affirmative votes requisite to carry an election, applies only to the matters referred to in said subdivision 8. To say that subdivision 8, with reference to the requisite number of votes, applies to the improvements specified in subdivision 11, and section 21, article XI, would be to establish a conflict between sections 3 and 21 of the charter. This should not be done, if both sections can be given operative effect through a different construction. We hold, therefore, that as to the power to incur indebtedness and to issue bonds for the character of improvements under consideration, section 21 of the charter applies, and the proceedings in connection with which bond issue must be in pursuance to the general law. Nor do we regard the curative act of 1911 (Stats. 1911, p. 421) as applicable to the matter under consideration. That act provides that it shall not operate to legalize any bonds of any municipality that have

not been at the time of the passage of that act authorized by a vote of not less than two-thirds of the qualified electors of such municipality voting at any such election. It being conceded that less than two-thirds of the voters voting at such special election voted in favor of the $50,000 bond issue, such defect was not cured by the legalizing act last above referred to. We are of opinion, therefore, that the clerk properly refused to attest the issue of bonds for the $50,000 so attempted to be authorized for the construction of the new pier.

As to the first proposition involving the issuance of bonds in the amount of $75,000 for the completion and repairs of an existing wharf, it is urged by respondent that such improvement being a municipal affair, the provisions of the charter with reference thereto are controlling, and that it is not within the province of the legislature to legalize, through the curative act before mentioned, a bond issue not authorized by the charter. With this we agree. It is well-settled law that a curative act, to be effective, must be with reference to proceedings which the legislature might in the first instance regulate and control. The charter in this instance has treated fully of the power of the corporation to issue bonds in connection with the wharves of the city, and of the conditions and emergencies controlling the issuance thereof. This being a municipal affair, the provisions of the charter must control, and unless such charter provisions authorize the issuance of bonds for such purposes the legislature may not legalize bonds which are violative of the provisions of the charter. This leads us, then, to determine whether or not, under the charter, authority is given for the issuance of bonds to complete repairs upon wharves of the city. It is insisted by respondent that section 21 of the charter, authorizing the acquisition, construction or completion of any permanent public building, or other public improvement, and the issuance of bonds therefor, does not comprehend repairs incident to such improvements, and it affirmatively appearing that this bond issue of $75,000 was sought for the purpose of completing repairs only, no authority is conferred by section 21 to issue bonds therefor, but that the funds requisite for such repairs must be realized from a general

·tax levy. While the general power to repair municipal public property is conferred by the charter, the power to issue bonds for the cost thereof is not so expressly conferred. "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: (1) Those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied." (*Hyatt* v. *Williams,* 148 Cal. 587, [84 Pac. 42], and authorities cited.) We are of opinion that it cannot be said from the language of the ordinances adopted relative to these bond issues that the issue of bonds for such repairs is indispensable; the language of the ordinance being, "the cost of the improvements will be too great to be paid out of the ordinary annual income and revenue of the city." This is far from a declaration of matters required in section 21 of the charter, which provides that bonds may be issued only in the event that the cost of the improvement contemplated, in addition to the other expenditures of the city, will exceed the income and revenue provided for in any one year. The charter fixes the limit and extent of the income provided in any one year as being one dollar upon each hundred of the valuation of assessed property. The language of the ordinances is open to the construction that the city council have declared that, in their opinion, the cost is too heavy to be borne out of the ordinary revenue; in other words, that it is inexpedient or inconvenient to so increase the tax levy as to cover the cost of these repairs. The word "ordinary" is defined by Webster as "methodical, regular, according to established order." "Ordinary" is defined as "common, usual, often recurring." (*Chicago & A. R. Co.* v. *House,* 172 Ill. 601, [50 N. E. 151].) For aught that appears, the ordinary, or, in other words, the usual, income of Long Beach may be far below the amount which could be realized under a general tax levy. We cannot, therefore, say that from the whole record it appears that a necessity did exist for the issuance of bonds to pay for such

repairs. Assuming, without deciding, that the repairs necessarily entailed in caring for a public improvement may be said to be essential and incidental to the power of construction, acquisition and completion, and that to deny the right to issue bonds for repairs in all instances might render nugatory the general power to keep such property in repair, nevertheless, we are satisfied that no power is vested by the charter in the city of Long Beach to issue bonds for repairs to public property, unless it is made to appear that the same is absolutely necessary for the preservation of such public property. Under this view, we are compelled to hold that the $75,000 bond issue here involved for repairs was not authorized by the charter, and that no duty devolved upon respondent to attest either series of bonds so presented and sought to be issued by petitioner.

Peremptory writ denied.

JAMES, J., and SHAW, J., Concurring.—We concur in the judgment and in all that is said by the presiding justice referring to the bonds proposed to be issued to secure money with which to build a new pier, i. e., the $50,000 issue. As to the bond issue proposed to be made for the purpose of securing $75,000 to cover cost of repairs on the pier already constructed by the city of Long Beach, we are of the opinion that the provisions of the charter do not expressly, or by any reasonable implication, authorize the municipality to issue bonds for such a purpose; and that any necessity which may render the making of such repairs imperative is immaterial and cannot be considered. Where it is provided that a bonded indebtedness may be created for specified purposes the permission and authority so given is exclusive of every purpose not expressly so named. The municipality of Long Beach may lawfully issue bonds to obtain funds with which to construct a wharf or pier, but when such wharf or pier is once constructed the cost of maintenance thereof and repairs thereon must be paid from the ordinary revenue of the city, which is the revenue obtained by the exercise of the power to raise funds for general municipal purposes by annual tax levy within the maximum rate fixed by law as the limit of such levy.