[Civ. No. 2563. Fourth Appellate District.—October 10, 1940.]

THE PEOPLE ex rel. CHARLES T. SMITH, Appellants, v. THE CITY OF WOODLAKE (a De Facto Municipal Corporation, etc.), Respondent.

Earl Warren, Attorney-General, Leon French, Deputy Attorney-General, W. R. Bailey and T. P. Wittschen for Appellants.

E. I. Feemster and Dickson F. Maddox for Respondent.

GRIFFIN, J.—On October 31, 1939, an election was held within certain unincorporated territory in the county of Tulare for the purpose of determining whether the same should be incorporated as a municipal corporation of the sixth class and for the purpose of voting for officers to fill the various municipal election offices prescribed by law. The

controlling statute herein is the Municipal Corporation Bill of 1883, as amended (Act 5233, Deering's Gen. Laws 1937, p. 2362 et seq.), section 2 of which provides, among other things, for the calling of an election and the giving of notice, and then reads in part as follows:

"Thereupon such board shall give notice of an election to be held in such proposed corporation *for the purpose of determining whether same shall become incorporated, and shall provide for the election of such officers* as shall be required in such city. . . . Such notice shall also require the voters to cast ballots which shall contain the words *'for incorporation'* and *'against incorporation', and also the names of persons voted for* to fill the various municipal elective offices. . . . " (Italics ours.)

Section 3 of the act provides:

"Such elections shall be conducted in accordance with the general election laws of the state . . . and no person shall be entitled to vote *thereat* unless he shall be a qualified elector of the county, . . . The Board of Supervisors shall meet on the Monday next succeeding such election, and proceed to canvass the votes *cast thereat;* and if, upon such canvass, it appears that the majority *of the votes cast* are for the incorporation, the board shall, by an order entered upon their minutes, declare such territory duly incorporated . . . and shall declare the persons receiving, respectively, the highest number of votes for such several offices to be duly elected to such offices." (Italics ours.)

Following the election the board of supervisors proceeded to canvass the votes "cast thereat" and determined that 343 valid ballots had been cast at said election and that 170 votes were for incorporation, 164 votes were against incorporation and that 9 of said votes expressed no choice on the question of incorporation but had been cast for candidates for city councilmen for the proposed city of Woodlake. At the trial of the instant case, by agreement, all the ballots cast at said election were recounted and reexamined and as a result of said recount the court found that 343 legal ballots were cast at said election, that 171 of such ballots were cast in favor of incorporation, 163 were cast against incorporation, and that 9 of such ballots duly and regularly cast expressed no choice upon the question of incorporation but were cast for candidates for city councilmen of said proposed city at such election. The court then found "that a major-

ity of the votes cast at said election for the purpose of determining whether said proposed city of Woodlake should be incorporated were for the incorporation thereof''. It will be seen from the foregoing that neither by the canvass before the supervisors nor by the recount in the superior court did the proposition for incorporation receive a majority of all of the votes cast at said election but did receive a majority of all the votes cast on that particular proposition.

It is agreed by all parties, that the question involved in this case is whether, under the governing statute, incorporation is accomplished by the votes of a majority of those voting on the question of incorporation, or by a majority of all legal votes cast at the election. The problem presented is one of statutory construction.

It is the respondent's contention in this case that the language of the statutory provision under which the election here was held requires the construction that the proposition is carried if it receives the specified majority of the votes actually cast on the proposition. The argument is advanced by respondent that under the act the election was not called for the purpose of electing officers but was called for the purpose of determining whether the proposed city should be incorporated, with provision made for naming persons for the required offices if the same should be incorporated; that no offices existed at the time of the election to which officers could be elected; that hence the purpose of the election was not to elect officers, but to determine the question of incorporation; that if incorporation failed, no officers were elected, regardless of the number of votes cast for them; that the election of officers was therefore a contingent matter and not the purpose for which the election was called. It is also argued that the 9 votes cast only for officers should not, in a legal sense, be considered as ''votes cast at such election'' or ''cast thereat'' because the question of who would be officers, if the proposition ''for incorporation'' should prevail, was a purely subsidiary and incidental question, wholly contingent upon the disposition made of the primary question, for the determination of which the election was called, and should not be regarded as the purpose for which the election was called, citing *Howland* v. *Board of Supervisors,* 109 Cal. 152 [41 Pac. 864]; *Watson* v. *Fouch,* 55 Cal. App. 765 [205 Pac. 58]; *People* v. *Town of Sausalito,* 106 Cal. 500 [39 Pac. 937]; *City of Santa Rosa* v. *Bower,* 142 Cal.

299 [75 Pac. 829] ; *Morgan* v. *City of Los Angeles,* 182 Cal. 301 [187 Pac. 1050] ; *Law* v. *City and County of San Francisco,* 144 Cal. 384 [77 Pac. 1014] ; *City of Pasadena* v. *Chamberlain,* 192 Cal. 275 [219 Pac. 965] ; *City of Long Beach* v. *Boynton,* 17 Cal. App. 290 [119 Pac. 677] ; *McQuillin's* Municipal Corporations (2d ed.), p. 468, sec. 171.

In reply appellant argues that by the language of the act the board of supervisors is required to canvass the votes *"cast thereat"*, meaning *at the election,* and is not required to canvass merely the votes cast on the question of incorporation, and that incorporation is not accomplished unless the proposal is carried by a majority of the votes *cast at such election* and that if the statute had intended to refer to the matter of incorporation separately it undoubtedly would have used the word *"thereon"*; that the latter word would then refer to a separate and distinct proposition, while the word *"thereat"* refers to the election itself; that section 2 of the act requires the board of supervisors to give notice *"of an election"*; that the statute further provides that such single election shall be not only for the purpose of determining whether the proposed city shall be incorporated but also to elect the required officers and that therefore each of the matters submitted to the voters was as much a part of that single election as was the other; that a vote at the election cast for a member of the council was not only a vote *"cast thereat"* but it was a proper and valid vote; that the statute requires the supervisors to canvass the votes *cast at the election,* not those *cast for incorporation,* and provides that if a majority *of the votes cast* are in favor of incorporation then only may incorporation be decreed; that if all of the valid votes are considered, the proposition of incorporation did not receive a *majority of the votes cast,* citing *Lowry* v. *Common Council,* 66 Cal. App. 45 [225 Pac. 283] ; *People* v. *Town of Berkeley,* 102 Cal. 298 [36 Pac. 591, 23 L. R. A. 838] ; *City of South Bend* v. *Lewis,* 138 Ind. 512 [37 N. E. 986], and many of the cases above cited by respondent.

Cases from without this jurisdiction based on different statutes can be found which support either contention herein. (20 C. J., p. 206, sec. 266; 20 C. J., p. 207, sec. 266, notes 38 and 39.) It is the general rule that when a proposition is required to carry by a majority *of the votes cast* at a certain election the proposition must receive the favorable vote of a majority of all valid votes cast at the election,

as distinguished from the votes on a particular question. (20 C. J., p. 207, sec. 266, note 39; 23 L. R. A. 838.) California has been classed among the majority holding to this construction. The case of *People* v. *Town of Berkeley, supra,* is cited as a case in which the identical question here presented was decided. That case involved the reorganization of the town of Berkeley under the Municipal Corporation Bill of 1883. This appears from the opinion of the court (p. 307):

"At the election held on May 8th a majority of all the electors who voted upon the proposition to reorganize were in favor of it, but not a majority of all who voted at the election.

"The provision of the Constitution in regard to elections like that under consideration has been quoted, and it will be observed that the words used are, 'whenever a majority of the electors voting at a general election shall so determine'. These words clearly do not indicate that only a majority of the electors voting upon the proposition is necessary, but would seem to imply that a majority of all those voting at the election is required. And such was evidently the interpretation placed upon this provision by the legislature when it passed the General Municipal *In*corporation Act of 1883. . . .

"This language plainly implies, we think, that a majority of all the electors voting at the election is necessary to carry the proposition to reorganize."

There is no difference in essential meaning between the language of section 4 of the Municipal Corporation Bill which was under consideration in the Berkeley case and the language of section 3 of the same bill under consideration in this case. Section 4 requires, for reorganization, a majority of all electors "voting at such election" while section 3 requires the canvass of the "votes cast thereat", and if the majority of the votes cast "thereat" are in favor of incorporation then only does it carry. The case of *People* v. *Town of Sausalito, supra,* contains *dicta* which is contrary to the holding in the Berkeley case and which appears to be contrary to later decided cases.

In *City of Santa Rosa* v. *Bower, supra,* a proposed amendment to the charter was submitted to the electors at a general municipal election. The statute provided that if a majority of the qualified electors "voting thereat" shall ratify

the same it shall thereafter be submitted to the legislature for approval. The case turned on the proper construction of the phrase ''a majority of the qualified electors voting thereat''. Our Supreme Court unanimously held that even though the proposition received the requisite majority of the votes of the electors voting on that particular proposition, it failed of passage unless it received a majority of all votes cast at the election. In that case the court referred to and approved the case of *People* v. *Town of Berkeley, supra,* and stated:

''There is no substantial distinction between the phrase construed in that case and the one under consideration here. A majority of the electors 'voting at a general election' is substantially the same thing as a majority of the qualified electors 'voting thereat'. The word 'thereat' in section 8 by grammatical construction refers to the previous phrase 'general or special election', and is exactly the same in meaning as if the sentence had read 'if a majority of such qualified electors voting *at such election* shall ratify the same.' ''

In *Howland* v. *Board of Supervisors, supra,* relied upon by respondent, two separate and distinct elections were held, one a general election and one for the purpose of submitting a proposition to incur a bonded indebtedness. It was held that since the two elections were separate and distinct the number of votes cast in one did not affect those cast in the other. The case of *Morgan* v. *City of Los Angeles, supra,* is in accord with the Howland case. In *Law* v. *City and County of San Francisco, supra,* several different proposals were submitted in one bond election. One proposition failed to receive the vote of ''two-thirds of all the electors voting at the special election'' but did receive more than two-thirds of the votes of the electors voting on that particular question. The court held that the one proposition failed to receive the requisite number of votes.

The case of *City of Pasadena* v. *Chamberlain, supra,* was one where it was attempted to call four special elections in order to submit to the voters four different propositions on which to vote bonds, and to consolidate these four special elections into one special election. The court held that this was in effect one bond election and that each proposition must receive a majority of two-thirds of all votes cast by those voting at the election. Reference is also made to *City of Long Beach* v. *Boynton, supra,* and *Lowry* v. *Common*

*Council, supra,* wherein the doctrine announced in *Law* v. *City and County of San Francisco, supra,* is followed.

■ The matter of electing officers was an indivisible part of the election. The law required the matters to be submitted at the same time and on the same ballot and under the same call. It would be a strained construction of the law to hold that a valid vote for officers was not a vote cast at the election. To strengthen the position we here assume, it should be noted that the Municipal Bond Act of 1901, under which many of the above-cited cases were decided, was amended (Stats. 1927, chap. 315, p. 527) to provide for the issuance of bonds when authorized by "the votes of two-thirds of all the voters *voting on any such proposition*". If the legislature had intended that the total votes cast at the election here involved should be predicated on the total votes cast on the proposition, they might well have so provided. This should not be accomplished by judicial decision when the statute is clear and unambiguous. The governing statute is plain. It requires a clear majority of all votes cast at the election for the incorporation to succeed. Since that majority was not had, it follows that incorporation failed.

The judgment is reversed.

Barnard, P. J., and Marks, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 9, 1940.