[Civ. No. 18809. Second Dist., Div. Two. July 15, 1952.]

THE PEOPLE, Respondent, v. WEST SIDE COUNTY WATER DISTRICT, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, R. L. Chamberlain, Deputy Attorney General, Richard A. Perkins, and Trippet, Newcomer, Yoakum & Thomas for Respondent.

FOX, J.—This is a proceeding in quo warranto alleging that defendant water district failed of formation and demanding it be ousted from all corporate rights and privileges. The district appeals from an adverse judgment.

The organization of the district in the Malibu section of Los Angeles County was attempted by an election under the County Water District Law. (Wat. Code, § 30000 et seq.) At the election the electors in the territory were privileged to vote on two propositions: (1) the formation of the district, and (2) the directors to serve the district in the event its formation was authorized. The result of the election showed that a total of 490 votes were cast, 242 in favor of the formation of the district, 241 against its formation, while seven electors failed to vote at all on the question of the formation of the district but voted only for directors. Based upon the affirmative and negative votes cast upon the question of the formation of the district, the board of supervisors made an order declaring the formation of the district, and

the county clerk filed with the Secretary of State a certificate stating that the formation of said proposed county water district had been approved by the voters. Relying on this certificate, the Secretary of State issued his certificate stating that the defendant had been duly incorporated. Thereafter the People instituted this proceeding on the relation of the complainant.

Judgment was entered June 20, 1951, declaring that the proposed county water district failed of formation and ousting it of corporate rights and privileges. In apparent disregard of the orderly processes of the law certain parties caused the Legislature during the 1951 regular session to enact chapter 1717, providing as follows: ''The West Side County Water District is hereby declared to be a properly formed and legally organized county water district under the County Water District Law.'' This act was passed June 22 and approved July 23. Since it carried no emergency clause, whatever effectiveness it had did not accrue until September 22, 1951. (Cal. Const., art. IV, § 1.)

At the special session of the 1952 Legislature chapter 31, Statutes of 1952, was unanimously passed, and approved by the governor, and has now become effective. (Cal. Const., art. IV, § 1.) It repealed chapter 1717 of the Statutes of 1951 which purported to validate the formation of defendant district.

The People contend that the formation of the district failed because a majority of the electors *voting at the election* did not vote in favor of it. Appellant, however, argues that by virtue of the fact that a majority of those voting on the question of the formation of the district voted in the affirmative the proposal was carried. The position of the People must be sustained.

With respect to the formation of a county water district, the Water Code provides that after certain preliminary proceedings the board of supervisors is authorized to call an election at which the formation measure is to be submitted and the first directors for the proposed district are elected, to take office in the event the district shall be created. (Wat. Code, §§ 30292, 30294.) Section 30320, Water Code, provides as follows: ''If a majority of the votes cast at the election . . . is in favor of forming the district, the board of supervisors shall . . . declare the territory formed as a district . . .'' It is also provided that: ''In case less than a

majority of the votes cast . . . are in favor of the measure, the formation fails . . .'' (Wat. Code, § 30297.)

Thus the power of the board of supervisors to declare a proposed water district formed depends upon the existence of a favorable "majority of the votes cast at the election" (§ 30320), or a "majority of the votes cast" (§ 30297). If the formation measure failed to receive the requisite statutory majority, then the formation failed, the declaration of formation was unauthorized and void, and the judgment of ouster in quo warranto was proper. (Code Civ. Proc., § 809.)

The Water Code provides for but one election, at which the formation measure is to be submitted and the first directors of the district are to be elected to take office if the district is formed. Thus, reference is made to "an election" (§ 30290), "the election" (§§ 30291, 30292, 30295, 30296, 30320), "that election" (§ 30292), and "the formation election" (§§ 30292, 30293, 30294). All of these expressions obviously mean the same thing. A single ballot is used, upon which both the proposition and the names of the candidates for directors appear. (Wat. Code, §§ 30295, 30776, 30778; Elec. Code, §§ 3813, 3827, 3830.)

▇ Thus a single election is provided for, and a single ballot. In order to authorize the formation of a county water district the formation measure must receive a favorable "majority of the votes cast at the election." (Wat. Code, § 30320.) Since there were 490 votes cast, it required at least 246 to constitute a majority. Here there were only 242 favorable votes. Because this was "less than a majority of the votes cast" the formation of the district failed. (§ 30297.)

If the Legislature had intended to authorize the formation of a county water district upon a favorable majority of the votes on the proposition rather than upon a favorable majority of the votes cast at the election it would have been a very simple matter to say so in concise terms. For example, at the same session of the Legislature at which the County Water District Law was adopted it was enacted that if joint city water supply plans "are approved by *a majority of the voters voting on the proposition* at the election, the cities may begin developing or acquiring the water supply . . ." (Italics added.) (Stats. 1949, ch. 79, § 38735, p. 187.) Other unequivocal language has been employed to accomplish the same result when

the Legislature had such an intent. Thus, a proposition for the appointment of certain officers of sixth class cities carries "if a majority of the votes cast on the proposition is for it." (Gov. Code, § 36510. See, also, to the same effect, Gov. Code, §§ 36616, 43230.) A proposition for the abandonment of public park property is adopted "if a majority of the electors voting on the proposition are in favor of it." (*Ibid*, § 38451.) Similar language is used to express the intention to authorize adoption of a city or county ordinance by initiative upon a favorable majority of those voting on the proposed ordinance. (Elec. Code, §§ 1617 and 1715.) Since no such language appears in either sections 30320 or 30297 of the Water Code, it is evident that the Legislature had no intention of permitting the creation of a new taxing body unless at least a majority of those who cast ballots clearly signified their desire to create it.

The decision of the trial court finds clear support in *People v. Woodlake,* 41 Cal.App.2d 119 [106 P.2d 71]. In that case the court was called upon to construe an essentially similar provision of the general city incorporation law which provided as follows: "The Board of Supervisors shall meet on the Monday next succeeding such election, and proceed to canvass the votes cast *thereat*; and if, upon such canvass, it appears that the *majority of the votes cast* are for the incorporation, the board shall, . . . declare such territory duly incorporated . . ." (Italics added.) (2 Deering's Gen. Laws, 1937, Act 5233, § 3.) The court construed "votes cast" to be equivalent to "votes cast thereat," i.e., "votes cast at the election," including ballots which were marked for municipal elective officers but neither for nor against incorporation. Although a majority of the electors who voted on the proposition to incorporate voted in favor thereof, the court held the incorporation failed because it did not receive a favorable majority of the votes cast at the election. The legislative intent is even clearer in section 30320 of the Water Code, for instead of the words "votes cast" referring back to "votes cast thereat" and hence back to "election" there appears the more explicit language "votes cast at the election." Other cases in accord with *People v. Woodlake* are *People v. Town of Berkeley,* 102 Cal. 298 [36 P. 591, 23 L.R.A. 838], *City of Santa Rosa v. Bower,* 142 Cal. 299 [75 P. 829], and *Law v. San Francisco,* 144 Cal. 384 [77 P.2d 1014].

The County Water District Law in the present form was

enacted in 1949. (Stats. 1949, chaps. 274, 284.) The Woodlake decision was published in 1940. The other cases cited herein as being in accord with it because they construed similar language to the same effect were all decided prior to *People v. Woodlake.* ▮ The use of language in the Water Code essentially similar to that which had received judicial construction strongly indicates that a like construction was intended in the later legislation. (*Long Beach* v. *Payne,* 3 Cal.2d 184, 191 [44 P.2d 305] ; *Long Beach* v. *Marshall,* 11 Cal.2d 609, 620 [82 P.2d 362] ; *Perry* v. *Jordan,* 34 Cal.2d 87, 93 [207 P.2d 47].)

▮ It is therefore clear that the proposed district failed of formation because of a failure to meet the basic statutory requirement of a favorable majority of those who voted at the election. Such deficiency is one of substance and fatal to the organization of the district as distinguished from defects which are technical in nature and a matter of form. Hence the so-called curative statute (Stats. 1951, ch. 1717) was more creative than curative. (*Miller & Lux* v. *Board of Supervisors,* 189 Cal. 254, 276 [208 P. 304].)

▮ The judgment entered on June 20, 1951, was self-executing. (*People* v. *City of Westmoreland,* 135 Cal.App. 517, 519 [27 P.2d 394].) Consequently whatever, if any, vitality (and it is not here necessary to determine the character thereof) the district has since enjoyed has been due to the "curative" statute which went into effect September 22, 1951. (Stats. 1951, ch. 1717.) That legislative life-line, however, was effectively severed by the passage and approval of chapter 31, Statutes of 1952, repealing the "curative" statute. ▮ The authority for this action is found in section 9606 of the Government Code which reads as follows: "Any statute may be repealed at any time, except when vested rights would be impaired. Persons acting under any statute act in contemplation of this power of repeal." No claim is made that any rights have become vested in the district since the effective date of the "curative" statute. Certainly no vested right could be acquired by those claiming to have been elected to the board of directors of the district, or by any one who may have attempted to deal with it, for it is clear from the language of section 9606, *supra,* that any person acting under the "curative" statute does so with the knowledge that the statute may be repealed and the legal foundation for any asserted rights wiped out. There were therefore

no impedimenta to prevent the repeal of the "curative" statute.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 11, 1952. Carter, J., was of the opinion that the petition should be granted.